UNITED STATES of America, Plaintiff-Appellee,

v.

Anthony PICCOLO, Defendant-Appellant.

No. 81–1238.

United States Court of Appeals, Sixth Circuit.

Argued June 20, 1983.

Decided Dec. 16, 1983.

Carl Ziemba, Detroit, Mich., for defendant-appellant.

Richard A. Rossman, U.S. Atty., Ross Parker (argued), Maura Corrigan, Asst. U.S. Atty., Detroit, Mich., for plaintiff-appellee.

Before LIVELY, Chief Judge, EDWARDS, ENGEL, KEITH, MERRITT, KENNEDY, MARTIN, JONES, CONTIE, KRUPANSKY and WELLFORD, Circuit Judges, and BROWN, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

This is an appeal by Anthony Piccolo (Piccolo) from his jury conviction on separate counts of conspiracy to distribute, possession with intent to distribute, and distribution of cocaine. 21 U.S.C. §§ 846, 841(a)(1). The defendant here principally contends that the indictment charging him with conspiracy was impermissibly vague, which allegedly resulted in the erroneous admission of co-conspirator statements, insufficient jury instructions, and placing Piccolo at risk of double jeopardy. A prior panel decision of this Court, *United States v. Piccolo*, 696 F.2d 1162 (6th Cir.1983), reversed the conspiracy conviction and remanded for a redetermination of the sentence imposed on the remaining counts. *En banc* review was granted, thus vacating the prior opinion, 705 F.2d 800.

The facts adduced at trial established that two federal undercover agents, Joseph Finnigan (Finnigan) and Joseph Rassey (Rassey), together with an informant named John Blue (Blue), met with a Detroit attorney involved in the narcotics trade, one Jerome Allen (Allen), in early 1979 for the purpose of purchasing cocaine from Allen. On February 1, 1979, Allen and Ernest Marcangello (Marcangello) delivered a sample of cocaine to the agents through Blue. A subsequent meeting between agent Finnigan and Allen was conducted and plans were formulated for a future purchase of drugs.

On February 15, a sale was arranged to occur later that day at the Hyatt Regency Hotel. In preparation for the transaction, Allen travelled to Marcangello's home, whereupon Marcangello stated that he did not have the cocaine required but would have "to get it from 'Pic.'" Marcangello telephoned the defendant, and together Allen and Marcangello proceeded directly to Piccolo's residence while under surveillance by federal agents.

Both Allen and Marcangello entered Piccolo's home. Allen testified that once inside the house, Piccolo and Marcangello went into the kitchen, and when they returned, Allen and Marcangello departed. In the automobile, Marcangello told Allen that he "had it" and the two travelled to the sale location.

Subsequently, the two undercover agents met Allen and Marcangello in a hotel room. During a conversation which was recorded and admitted as evidence, agent Finnigan expressed doubt about the quality of the cocaine, which provoked a response from both Allen and Marcangello that they had brought the cocaine straight from the source [Piccolo]. The agents paid $8,000 for approximately four ounces of cocaine and inquired about larger and regular purchases of cocaine. Marcangello advised that such a relationship could be arranged, and that his source was Italian and about twenty years older than himself.

Subsequent to the February 15 meeting, the agents continued to discuss future cocaine sales with Allen and Marcangello. In turn, Allen, Marcangello and Piccolo met together on Allen's boat where Piccolo questioned Allen and agents Finnigan and

Rassey, specifically inquiring as to the trustworthiness of the agents. Piccolo also had a telephone conversation concerning the trustworthiness of the undercover purchasers with Allen.

Piccolo was indicted on July 22, 1980 upon the following charges:

The Grand Jury Charges:

Count One

That from on or about August 1, 1977, and continuing thereafter up to and including June 21, 1979, within the Eastern District of Michigan, Southern Division and elsewhere, ANTHONY PICCOLO, defendant herein, did knowingly, intentionally, and unlawfully, combine, conspire, confederate, and agree together with various other persons whose names are both known and unknown to the Grand Jury, to commit an offense against the United States, that is, to possess with intent to distribute, and to distribute various quantities of cocaine, a Schedule II, Narcotic Drug Controlled Substance, contrary to the provisions of Section 841(a)(1), of Title 21, United States Code, all in violation of Section 846, Title 21 United States Code.

It was part of said unlawful conspiracy that ANTHONY PICCOLO, defendant herein, and various co-conspirators would possess with intent to distribute and distribute said narcotic drug controlled substance (cocaine) within the Eastern District of Michigan, Southern Division, or would aid and abet each other in the distribution of said narcotic drug controlled substance (cocaine) within the Eastern District of Michigan and elsewhere;

In furtherance of said unlawful conspiracy, and to effect the objectives thereof, the defendant and various co-conspirators named herein, committed the following overt acts:

OVERT ACTS

1. On February 15, 1979, ANTHONY PICCOLO, defendant herein, met with A. Jerome Allen and Ernest Marcangello at Piccolo's residence located at 19710 Shady Lane, St. Clair Shores, Michigan.

2. On or about February 15, 1979, A. Jerome Allen and Ernest Eugene Marcangello travelled together to the Hyatt Regency Hotel, Fairlane Town Center, Dearborn, Michigan.

3. On or about February 15, 1979, Ernest Eugene Marcangello distributed approximately 108 grams of cocaine at the Hyatt Regency Hotel, Fairlane Town Center, Dearborn, Michigan.

All in violation of Section 846, Title 21, United States Code.

Count Two

That on or about February 15, 1979, in the Eastern District of Michigan, Southern Division, ANTHONY PICCOLO, defendant herein, did knowingly, intentionally, and unlawfully possess with intent to distribute approximately 108 grams of cocaine, a Schedule II, Narcotic Drug Controlled Substance; in violation of Section 841(a)(1), Title 21, United States Code.

Count Three

That on or about February 15, 1979, in the Eastern District of Michigan, Southern Division, ANTHONY PICCOLO, defendant herein, did knowingly, intentionally, and unlawfully distribute approximately 108 grams of cocaine, a Schedule II, Narcotic Drug Controlled Substance; in violation of Section 841(a)(1), Title 21, United States Code.

THIS IS A TRUE BILL

The defendant charges in this appeal that the conspiracy count as drafted in the indictment is vague and indefinite, in that not all of the co-conspirators are identified, thereby permitting the prosecution to alter or modify the offense at will to conform with the testimony developed at trial. The original panel agreed, and concluded that the indictment was "not specific enough to cabin the prosecutor and prevent him or her from 'roaming' at large." 696 F.2d at 1167. This decision was based upon both a purported failure of the indictment to conform to essential Constitutional standards and

the cumulative effect of evidentiary variances at trial which resulted from the ambiguity of the indictment.

Preliminarily, it must be emphasized that conformity of the indictment with Constitutional standards and conformity of evidence adduced at trial with the indictment are two wholly distinct areas of inquiry.

■ The basic Constitutional standard by which to judge the sufficiency of an indictment is mandated by the Sixth Amendment which requires that the indictment inform the defendant of "the nature and cause of the accusation." U.S. Const., Amend. VI. This standard is expressed by Fed.R.Crim.P. 7(c)(1), which states, in part, that the indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." The landmark Supreme Court opinion of *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), does not represent an enlargement of this Constitutional requirement that an indictment afford notice of the specific charged offense; *Russell,* instead, elucidates the criteria by which the sufficiency of an indictment may be measured.

■ Specifically, *Russell* teaches that notice is sufficient when it permits the defendant to obtain "the significant protections which the guaranty of a grand jury indictment was intended to confer." 369 U.S. at 763, 82 S.Ct. at 1046. In other words, the adequacy of the notice is measured by its effectiveness in securing the intended benefits. The Court, in particular, "emphasized two of the protections which an indictment is intended to guarantee," *id.,* and established them as the "preliminary criteria" by which an indictment is to be tested:

[F]irst, whether the indictment "contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet,'" and, secondly, "'in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he

may plead a former acquittal or conviction.'"

369 U.S. at 763–764, 82 S.Ct. at 1046–1047 (citations omitted).

It is conceded in the case at bar that the information provided in the indictment is fully adequate should Piccolo be required to interpose his present conviction as a bar to double jeopardy. Indeed, the indictment clearly specifies the amount and type of narcotics involved, the precise date of sale, and the location of the sale. At issue, then, as in *Russell,* is Piccolo's contention that the conspiracy count "failed to satisfy the first essential criterion by which the sufficiency of an indictment is to be tested; i.e., that [it] failed to sufficiently apprise the defendant 'of what he must be prepared to meet.'" *Id.* at 764, 82 S.Ct. at 1047.

■ Essentially, Piccolo argues that the failure of the indictment to particularly identify every member of the conspiracy permitted the prosecution to continually interpose alternate conspiracies at trial to conform with the evolution of the evidence. The panel agreed and found that the prosecution was "free to roam at large—to shift its *theory of criminality* so as to take advantage of each passing vicissitude of the trial and appeal." *Russell, supra,* at 768, 82 S.Ct. at 1049 (emphasis added). In fact, the theory of criminality articulated in the indictment was, and is, unalterably clear.

Initially, the government's "theory of criminality" in the indictment against Piccolo rests upon an allegation of conspiracy. Regardless of whether Piccolo was the "principal" conspirator, dispatching the others as sales "agents," or whether Marcangello was the "principal" and Piccolo was the conspiracy's "agent" who acquired the cocaine from suppliers, the government's "theory of criminality" was that Piccolo was a full member of the conspiracy, not simply an individual operator who sold to Marcangello or an unwitting dupe. *See United States v. Hamilton,* 689 F.2d 1262, 1270 (6th Cir.1982) *cert. denied,* —— U.S. ——, 103 S.Ct. 753, 74 L.Ed.2d 971 (1983). This theory of criminality was fully set

forth in the indictment and was unvarying throughout the trial.

Further, the theory promulgated in the indictment was that the conspiracy had as its object the possession coupled with the intent to distribute cocaine. Far from writing the prosecutor a "blank check" to be completed at trial with any criminal enterprise that could be fashioned from the activities of Piccolo and any other associate, the grand jury left no doubt that the conspiracy it had in mind was conceived with a calculated design to distribute cocaine. Again, there is no evidence that the government abandoned or ignored this theory at trial.

Moreover, the theory of criminality formulated in the indictment plainly stated that this conspiracy, which particularly intended to possess and distribute cocaine, and which specifically included Piccolo as a full member, acted between given dates, and committed a definite series of overt acts on February 15, 1979 through two named individuals. Despite this degree of definition, Piccolo argues that the inclusion of other unnamed co-conspirators in the indictment freed the government to construct fanciful or alternate conspiracies at trial, wholly unknown to the grand jury.

The case authorities are concise that a valid indictment may charge a defendant with conspiring with persons whose names are unknown. *Rogers v. United States,* 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951); *United States v. Allen,* 613 F.2d 1248 (3rd Cir.1980); *United States v. Rivera Diaz,* 538 F.2d 461 (1st Cir.1976). Indeed, as noted in *United States v. Davis,* 679 F.2d 845, 851 (11th Cir.1982), it is the grand jury's statement of the "existence of the conspiracy agreement rather than the identity of those who agree" which places the defendant on notice of the charge he must be prepared to meet. Certainly, it cannot be argued that the indictment against Piccolo is invalid because it included unnamed co-conspirators who were unknown to Piccolo; it is not essential "that each conspirator was aware of all other conspirators." *United States v. Watson,* 669 F.2d 1374,

1379 (11th Cir.1982) (citations omitted). The critical point, insofar as providing notice to a defendant of the accusation he must defend against at trial, is that "the breadth of a conspiracy is defined by the unlawful agreement." *United States v. Borchardt,* 698 F.2d 697, 702 (5th Cir.1983). Because the grand jury particularly described the unlawful agreement which formed the theory of criminality herein, this Court is fully satisfied that the instant indictment was Constitutionally sound.

Having concluded that the conspiracy count was adequate to fulfill the obligations of noticing Piccolo of the charge against him and precluding a future double jeopardy risk from arising, it is appropriate to consider if events at trial either amended the indictment or permitted proof at variance therefrom. The distinction between an amendment and a variance was succinctly stated in the polestar case of *United States v. Beeler,* 587 F.2d 340 (6th Cir.1978):

A variance occurs when the proof introduced at trial differs materially from the facts alleged in the indictment. In contrast, an amendment involves a change, whether literal or in effect, in the terms of the indictment. Amendments have been held to be prejudicial *per se* while variances may be subject to the harmless error rule. [Citations omitted]. Variances which create "a substantial likelihood" that a defendant may have been "convicted of an offense other than that charged by the grand jury" constitute constructive amendments ... [requiring application] of the prejudicial *per se* approach to such variances.

587 F.2d at 342 [cite omitted].

Though not specifically framed in terms of variance or amendment, the appellant would locate the indictment's "vagueness" in, *inter alia,* the denial of a bill of particulars, the failure to exclude the testimony of one Keith Smith (Smith), the admission of co-conspirator statements pursuant to *United States v. Vinson,* 606 F.2d 149 (6th Cir. 1979) and *United States v. Enright,* 579 F.2d 980 (6th Cir.1978), the government's closing argument, and the jury charge.

Initially, it appears that Piccolo's assertions regarding the bill of particulars, Smith's testimony, the co-conspirator statements[1] and the prosecutor's argument are all a form of argument directed to a variance between the language of the indictment and the proof permitted. Essentially, it is contended that evidence was admitted, such as Smith's testimony concerning other drug transactions, which was overbroad or at variance with the indictment, and which could have been cured by a bill of particulars or by limiting closing argument. In fact, the record discloses that no variance occurred. The bill of particulars was denied because Piccolo had received, through extensive discovery, all of the information within the possession of the government except the identity and grand jury testimony of a single co-conspirator witness, which omission did not constitute a variance. *See United States v. Largent,* 545 F.2d 1039 (6th Cir.1976), *cert. denied,* 429 U.S. 1098, 97 S.Ct. 1117, 51 L.Ed.2d 546 (1977). Further, the testimony of Smith as to Piccolo's involvement with drugs, though extending beyond the charged conspiracy, was not at variance with the indictment, but was consistent therewith in reflecting the operation of the conspiracy, *United States v. Archbold-Newball,* 554 F.2d 665, 680–81 (5th Cir.), *cert. denied,* 434 U.S. 1000, 98 S.Ct. 644, 54 L.Ed.2d 496 (1977); that the criminal activity was "systematic", *Spencer v. Texas,* 385 U.S. 554, 560–61, 87 S.Ct. 648, 651–52, 17 L.Ed.2d 606 (1967); and constituted proof of intent or lack of accident or mistake. *See United States v. Reese,* 568 F.2d 1246, 1250–51 (6th Cir.1977); *United States v. Carlson,* 547 F.2d 1346, 1354 (8th Cir.1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977). The exhaustive discovery and evidentiary proceedings, as well as Smith's testimony, merely established that it was more probable than not that Piccolo knew what he was doing and that he willfully entered into and became a member of the charged conspiracy. Moreover, the trial court so specifically instruct-

ed the jury. This Court finds no variance between the charge of the indictment and the evidence admitted at trial.

 Moreover, this Court finds no merit in the assertion that the jury instruction as to conspiracy impermissibly amended the indictment so as to place Piccolo at risk of conviction for simply furnishing cocaine to Marcangello without ever joining the conspiracy. The charge stated in pertinent part:

> In your consideration of the evidence in the case as to the offense of the conspiracy charged, you should first determine whether or not the conspiracy existed as alleged in the indictment. *If you conclude that the conspiracy did exist, you should next determine whether or not the accused willfully became a member of the conspiracy. If it appears beyond a reasonable doubt from the evidence in the case that the conspiracy alleged in the indictment was willfully formed and that the defendant willfully became a member of the conspiracy either at its inception or afterwards,* and that thereafter one or more of the overt acts charged in furtherance of some object or purpose of the conspiracy, then there may be a conviction even though the conspirators may not have succeeded in accomplishing their common object or purpose and in fact may have failed in so doing.

> \* \* \* \* \* \*

Four essential elements are required to be proved to establish the offense of conspiracy charged in the indictment:

> "First: That the conspiracy described in the indictment was willfully formed and was existing at or about the time alleged;

> "Second: *That the accused willfully became a member of the conspiracy;*

> "Third: That one of the conspirators thereafter knowingly committed at least one of the overt acts charged in the in-

---

1. We find no error in the trial court's decision to admit the co-conspirator statements under *Vinson* and *Enright.*

dictment at or about the time and place alleged; and,

"Fourth: That such overt act was knowingly done in furtherance of some object or purpose of the conspiracy as charged."

(Emphasis added).

In addition, to the extent that Piccolo seeks review of the instruction on appeal, Fed.R.Crim.P. 30 bars a criminal defendant from assigning error to the charge absent an objection at trial. In the instant case there were two complete hearings on the proposed jury instructions during which both parties requested modifications, ten sections of the charge were modified at defendant's request, and defense counsel pronounced himself satisfied with the final instructions. The rule is clear that a defendant under these circumstances may not obtain review of the instructions to the jury on appeal absent plain error. *United States v. Warner*, 690 F.2d 545 (6th Cir. 1982). Plain error requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice. *United States v. Thevis*, 665 F.2d 616, 645 (5th Cir.), *cert. denied*, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982). This charge does not rise to plain error.

Accordingly, Piccolo's convictions on all counts are hereby AFFIRMED, and the matter remanded for re-sentencing on Counts II and III.[2]

NATHANIEL R. JONES, Circuit Judge, dissenting.

As is apparent from the majority's recitation of the facts, there were numerous meetings between various individuals before the actual cocaine transaction was made. The evidence at trial established that Finnigan, Rassey, Allen and Marcan-gello met on at least three occasions while Allen, Marcangello and Piccolo also met on several occasions. The indictment charged a conspiracy to possess and distribute cocaine with overt acts which involved various persons whose names were both known and unknown. Because I view this indictment to be insufficient in that it was not specific enough to link the grand jury's concerns to the evidence presented by the prosecution at trial, I respectfully dissent.

Count one of the indictment makes a general charge of a conspiracy to possess and distribute cocaine. The appellant contends that the indictment was lacking in specificity in that it failed to state exactly what conspiracy Piccolo joined. It is urged by the government that the indictment adequately set out the object of the conspiracy, *i.e.* to possess and distribute cocaine. Further, it is argued that Piccolo was a member of it. The majority concludes that the indictment met the requirement of specificity for a conspiracy. Yet, under the rule of *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), one of the purposes of the specificity requirement is to make sure that the indictment serves both as a check on the grand jury and as a link between the grand jury's considerations and the prosecution's presentation of its case. In my view of the indictment and the evidence, which can arguably be construed to establish two separate conspiracies, the check and link purpose of specificity required in *Russell* was not satisfied.

In *Russell*, the Supreme Court noted that it is difficult to imagine a case in which the insufficiency of an indictment results in its complete failure to inform the defendant of the nature of the accusation against him. Yet, when an indictment leaves "the prosecution free to roam at large—to shift its

---

2. As noted in both the original majority and dissent, it was improper to impose a single five year sentence upon Piccolo for the convictions obtained on Counts II and III of the indictment. This Court has held in *United States v. Woods*, 568 F.2d 509 (6th Cir.), *cert. denied*, 435 U.S. 972, 98 S.Ct. 1614, 56 L.Ed.2d 64 (1978), and *United States v. Stevens*, 521 F.2d 334 (6th Cir.1975), that while a defendant may be con-victed of both possession with intent to distribute and distribution, he may not be sentenced on both counts, even if the sentences are made concurrent, when the only possession is immediately prior to distribution. Because it is unclear if Piccolo's single sentence was functionally a prohibited concurrent sentence or meant to apply only to a single count the matter must be remanded.

theory of criminality so as to take advantage of each passing vicissitude of the trial" 369 U.S. at 768, 82 S.Ct. at 1049, it is invalid for it lacks in specificity and does not confine the prosecutor to a particular conspiratorial agreement. In such a case, when either the indictment fails to allege a specific conspiracy or when the proof at trial establishes the possibility of more than one conspiracy, the indictment's failure to name specific individuals as co-conspirators renders the indictment insufficient. The latter is clearly the case here.

In my opinion, the evidence presented at trial is susceptible to several constructions. The jury could very well have construed the evidence to establish two separate conspiracies—one between Finnigan, Rassay, Allen and Marcangello and another between Allen, Marcangello and Piccolo. Since this construction allows for the possibility that the jurors were not in agreement as to which conspiracy had been proven, the failure of the indictment to specify all known co-conspirators renders it insufficient. Moreover, I construe the evidence to be lacking because proof does not clearly establish that Piccolo entered into a conspiracy to make cocaine sales on a continuous basis as opposed to his merely agreeing to make the isolated sale which occurred on February 15, 1979. In each of these instances, the potential for a due process violation exists because of the uncertainty as to whether the grand jury which issued the indictment and the jury which rendered the guilty verdict had the same facts in mind. This important consideration was emphasized in *Russell* when the Court stated:

> To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.

369 U.S. at 770, 82 S.Ct. at 1050.

In light of the foregoing considerations, I remain of the view that the indictment failed to satisfy the *Russell* requirement of specificity. The government failed to ensure that the considerations before the jury at the close of the trial were the same as those before the grand jury at the time the indictment was issued. Therefore, I dissent.