822 F.2d 1089
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William R. HAWKINS, Defendant-Appellant.
 No. 86-1646
 United States Court of Appeals, Sixth Circuit.
 July 14, 1987.
 
 Before KENNEDY and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 William R. Hawkins, defendant-appellant, appeals from his convictions under 18 U.S.C. Secs. 666, 1344, 2314 and 2315, as well as 18 U.S.C. Secs. 371 and 2. Defendant was charged, inter alia, with conspiring to use checks, stolen from an institution which receives federal funds, to purchase and transport interstate oriental rugs, and depositing another forged stolen check into a bank account. Defendant argues that: (1) his prior exculpatory statements should have been suppressed because the waiver of his Miranda rights was rendered involuntary and unintelligent by the existence of an unexecuted arrest warrant; (2) two different jury instructions constituted plain error; and (3) the district court erred in deciding one element of 18 U.S.C. Sec. 666 as a matter of law. For the following reasons, we affirm defendant's convictions.
 
 I.
 
 2
 Defendant was indicted on October 17, 1985, along with Donald Martin, Sheila Kelly and Joyce Swan. The indictment alleged that defendant had conspired with the codefendants to knowingly steal checks from the Highland Park, Michigan School District (hereinafter referred to as 'School District'), had used the stolen funds to purchase and transport interstate oriental rugs, and had knowingly attempted to obtain funds by false means from a federally insured bank.
 
 
 3
 The evidence at trial established that in October 1984, defendant Hawkins contacted oriental rug dealer Abel Ghassemi in St. Louis, Missouri, in order to facilitate a purchase of investment quality oriental rugs on behalf of a school. Subsequently, Hawkins went to Ghassemi's place of business with a woman introduced as 'Doris Mack', a purported purchasing agent for the School District. 'Doris Mack' was later identified to be Joyce Swan. Hawkins and Swan selected several rugs, and Swan executed a $115,000 check drawn on the School District's account and pre-signed with a rubber stamp. Although Ghassemi would not ship the rugs until this down-payment check had cleared, he paid Hawkins a $5,000 commission immediately and once the check had cleared, Hawkins received an additional commission of $31,800.
 
 
 4
 The rugs were thereafter shipped to Hawkins' condominium in Detroit, arriving on November 1, 1984. Hawkins then took the rugs to Washington, D.C. with an unindicted coconspirator, Walter Tyler. Once in Washington, D.C., Hawkins allegedly attempted to sell the rugs.
 
 
 5
 In the meantime, another stolen check had been used to open an account at the Manufacturers Bank of Saline in Ann Arbor, Michigan in the name of 'Kelly Newman.' Sheila Kelly, the coconspiratory who had opened the account, testified that Hawkins had filled out the check. She also testified that Hawkins had instructed her to open a second bank account in the Washington, D.C. area, and that he had dictated a letter to the Ann Arbor bank directing it to transfer the funds to the new account.
 
 
 6
 The School District's bank detected that the 'Kelly Newman' check was chronologically out-of-series, and an investigation ensued on November 7, 1984. As a result of the investigation, it was discovered that four checks were missing from a box in the School District's storage area. Walter Tyler testified that he learned that Donald Martin, a former purchasing agent for the School District, and Joyce Swan had stolen the checks.
 
 
 7
 After the bank discovered that Hawkins had facilitated the purchase of the oriental rugs with the stolen checks, Hawkins contacted bank officer Robert Luckow to schedule a meeting to discuss the checks. A meeting was held on November 13, 1984, with two FBI agents present.
 
 
 8
 One of the agents read Hawkins the Miranda warnings, and Hawkins then signed a written waiver of his Fifth Amendment rights. This waiver was produced at trial. In response to the FBI agents' questions, Hawkins denied knowing Martin or Swan, stated that he had arranged the carpet purchase for a woman named 'Doris' and a black man whose name he did not know, represented that once the carpet had arrived in Detroit he had delivered them to 'Doris' that same day, and stated that he did not know how to reach 'Doris,' 'Kelly' or the black man. Hawkins terminated the interview stating that he wished to talk to an attorney. The FBI agents thereafter placed him under arrest pursuant to an arrest warrant which had been issued five days earlier.
 
 
 9
 At trial, defendant testified in his own behalf, presenting a version of the events which significantly differed from his initial statements to the FBI agents. The prior statements were admitted into evidence over his objection.
 
 
 10
 Defendant was found guilty on seven counts in a nine-count indictment. This included two convictions of conspiracy under 18 U.S.C. Sec. 371--one count for conspiring to defraud a local governmental agency in violation of 18 U.S.C. Sec. 666, and one count of conspiring to transport stolen goods interstate in violation of 18 U.S.C. Sec. 2314. He was also convicted on two counts of interstate transportation of stolen property (transporting the checks and transporting the rugs), and one count of receiving stolen property in violation of 18 U.S.C. Sec. 2315. Further, he was convicted of defrauding a local governmental agency which receives federal funds in violation of 18 U.S.C. Sec. 666, and of bank fraud in violation of 18 U.S.C. Sec. 1344. He received five years on each of six counts to be served concurrently, and one year on the bank fraud count to be served consecutively. He was fined $10,000 on each count, ordered to pay restitution in the amount of $115,000, and assessed an additional $50 as to each count. He thereafter filed this timely appeal.
 
 II.
 A. Unexecuted Warrant
 
 11
 Defendant argues that the district court committed reversible error by admitting his prior inconsistent statements on the ground that the existence of an unexecuted warrant and the FBI agents' failure to execute the warrant prior to interviewing him rendered the waiver of his Fifth Amendment rights involuntary and unintelligent. Defendant asserts that the waiver of his Fifth Amendment rights and his resulting statements were tainted because he was misled as to the true nature of the investigation, both by the agents' unjustifiable delay in executing the arrest warrant 'forthwith' and by their failure to inform him of the existence of the warrant.[1]
 
 
 12
 In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court established that a defendant has a Fifth Amendment right against self incrimination during custodial interrogations. This right can be waived only if the waiver is voluntarily, knowingly and intelligently made. Colorado v. Spring, 107 S. Ct. 851, 856 (1987). If the right is not voluntarily and intelligently waived, the statements and the fruit resulting therefrom cannot be admitted into evidence. In the instant case, Hawkins was given Miranda warnings whereupon he signed a written waiver of his rights. The issue, therefore, is whether the existence of an unexecuted arrest warrant, or the agents' delay in executing the warrant, invalidated defendant's written waiver of his Fifth Amendment rights and rendered his statements inadmissible.[2]
 
 
 13
 In Spring, the Supreme Court held that a waiver of Fifth Amendment rights remained valid despite the police officers' failure to inform the defendant as to every crime for which he would be questioned, concluding that mere silence by police officers neither amounted to coercion nor the type of police trickery that would invalidate a Fifth Amendment waiver. 107 S. Ct. at 857-58 & n.8. The Court noted further that the defendant was precluded from arguing that he was compelled to respond to questions when he was informed of his right to remain silent and had signed a waiver claiming that he understood that right.
 
 
 14
 We find that the FBI agents' silence did not affect the validity of defendant's waiver and thus did not render his statements inadmissible. Defendant had been informed of his rights and was aware that he did not have to answer questions; in fact, the interview was terminated upon his request. Since an unexpressed intent of a police officer to execute an arrest warrant does not convert an interview into a custodial interrogation, see, e.g., United States v. Reynolds, 762 F.2d 489, 493 (6th Cir. 1985), we cannot conclude that an unexpressed intent to execute an arrest warrant can amount to coercion or the type of police trickery that would invalidate a Fifth Amendment waiver. Nor do we believe that the agents' delay in executing the arrest warrant rendered defendant's waiver involuntary or his statements inadmissible.[3] Since defendant executed a valid waiver after thoroughly being informed of his right to remain silent, we conclude that his statements were not coerced. Accordingly, we hold that the district court properly denied his motion to suppress.
 
 B. Reasonable Doubt Jury Instructions
 
 15
 The district court made the following reasonable doubt instruction to the jury:
 
 
 16
 I said to you that the burden is upon the Government to prove a Defendant guilty beyond a reasonable doubt. What do we mean by the phrase 'beyond a reasonable doubt?' Well, it has been said that a juror is satisfied beyond a reasonable doubt as to an issue in controversy when, after a full and fair consideration of all the evidence in the case, a juror can say that he or she is firmly convinced of the Defendant's guilt.
 
 
 17
 Now, it is not required, members of the jury, that the Government prove guilt beyond all possible doubt. The test is one of reasonable doubt.
 
 
 18
 A reasonable doubt is just what the words imply. A reasonable doubt is a doubt based upon reason and common sense. It's a doubt that grows out of the evidence or the lack of evidence in a particular case. In other words, it's not a flimsy, fanciful, fictitious doubt that you can raise about anything or everything, nor is it a doubt based upon sympathy, bias or prejudice.
 
 
 19
 We note initially that since defendant failed to object to this instruction as required by Fed. R. Crim. P. 30, this court may only review the instruction for plain error. Fed. R. Crim. P. 52(b); United States v. Piccolo, 723 F.2d 1234, 1241 (6th Cir. 1983), cert. denied, 466 U.S. 970 (1984). Plain error is to be used only in exceptional situations and only to avoid a miscarriage of justice. United States v. Young, 470 U.S. 1, 15 (1985); Piccolo, 723 F.2d at 1241; United States v. Hook, 781 F.2d 1166, 1172 (6th Cir.), cert. denied, 107 S. Ct. 269 (1986). Therefore, reversal is required only if the trial is "infected with error so 'plain' the trial judge and prosecutor were derelict in countenancing it." Hook, 781 F.2d at 1172 (quoting United States v. Frady, 456 U.S. 152, 163 (1982)).
 
 
 20
 Defendant claims that this instruction significantly deviates from the reasonable doubt instruction endorsed by this Circuit. Specifically, defendant objects to the 'firmly convinced' language and claims that the trial court should have used the more traditional 'hesitate to act' instruction.
 
 
 21
 While this court has approved the 'hesitate to act' instruction, see United States v. Hart, 640 F.2d 856, 860 n.3 (6th Cir.), cert. denied, 451 U.S. 992 (1981), the instant instruction incorporates many aspects of the instruction approved of in Hart such as the 'reason and common sense' language. Id. See also United States v. Bustillo, 789 F.2d 1364, 1368 (9th Cir. 1986) (where defendant requested the 'doubt based on reason and common sense' instruction). Even if the 'hesitate to act' instruction is preferred, the existence of a better instruction does not automatically provide a ground for reversal. Bustillo, 789 F.2d at 1368. Cf. Hart, 640 F.2d at 860. In addition, at least two courts have upheld the use of the phrase 'firmly convinced of defendant's guilt' as a valid reasonable doubt instruction. See Bustillo, 789 F.2d at 1968; United States v. Hunt, 794 F.2d 1095, 1100-01 (5th Cir. 1986).
 
 
 22
 Viewed in its entirety, we conclude that the instant instruction does not shift the burden of proof to defendant and does not constitute plain error.
 
 C. Exculpatory Statements
 
 23
 The court gave the following instruction on permissible inferences that can be drawn from the unexplained possession of stolen property or a false exculpatory statement regarding the possession of stolen property:
 
 
 24
 Let me define for you possession of property recently stolen.
 
 
 25
 Possession of property recently stolen, if not satisfactorily explained, is ordinarily a circumstance from which the jury might reasonably draw the inference and find in light of the surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen. Ordinarily, the same inference may reasonably be drawn from a false explanation or possession of recently stolen property. The term 'recently' is a relative term, members of the jury, has no fixed meaning. Whether the property may be considered as recently stolen depends upon the nature of the property and all the facts and circumstances shown by the evidence in the case.
 
 
 26
 The longer the period of time since the theft or embezzlement, the more doubtful becomes the inference which may reasonably be drawn from the unexplained possession. If you find beyond a reasonable doubt from the evidence that the checks or the oriental rugs described in the indictment were stolen, and that while recently stolen the checks or rugs were in the possession of any one of the accused, you may from those facts draw the inference that the check or rugs were possessed by the accused with knowledge that the property was stolen, unless possession of recently stolen property by the accused is explained to the satisfaction of the jury by other facts and circumstances and evidence in the case.
 
 
 27
 (Emphasis added). Since the defendant did not object to this instruction, we can only review the instruction for plain error. Piccolo, 723 F.2d at 1241.
 
 
 28
 Barnes v. United States, 412 U.S. 837 (1973), established that a defendant is not denied a fair trial nor is his Fifth Amendment right against self incrimination affected by an instruction that permits an inference of knowledge as to the stolen nature of property from an unsatisfactorily explained possession of the stolen property. Defendant admits as much. However, defendant argues that by including the underlined portion of the instruction above, the court improperly allowed a false exculpatory statement to be considered substantive evidence of guilt. Arguing that false exculpatory statements can only be admissible as circumstantial evidence of consciousness of guilt, defendant concludes that he was denied a fair trial. See United States v. Di Stefano, 555 F.2d 1094, 1104 (2d Cir. 1977). We reject this argument.
 
 
 29
 First, this case is clearly distinguishable from Di Stefano. There, the court made specific reference to the defendant's exculpatory statements, placed improper emphasis on the importance of those statements, and then instructed the jury that if the statements were found to be false, the jury could consider that fact as circumstantial evidence of the defendant's guilt. 555 F.2d at 1104. Further, the court of appeals noted that the evidence of the defendant's guilt was weak. In the instant case, the trial court did not draw unnecessary or improper attention to defendant's exculpatory statements, nor was the evidence of guilt weak. Cf. United States v. Boekelman, 594 F.2d 1238, 1241 (9th Cir. 1979).
 
 
 30
 Further, at least one circuit court has upheld a very similar jury instruction concluding that the permitted inference did not shift the burden of proof to the defendant. See United States v. Grossman, 614 F.2d 295, 296 (1st Cir. 1980). Cf. United States v. Martindale, 790 F.2d 1129, 1132-33 & n.2 (4th Cir.) (stating that such an inference is permissible, but noting that it was not reviewing a jury instruction), cert. denied, 107 S. Ct. 193 (1986). Another circuit has concluded that a similar instruction did not unnecessarily confuse the jury. United States v. Sargis, 460 F.2d 1329, 1330 (8th Cir. 1972) (per curiam).
 
 
 31
 Accordingly, we conclude that the district court's instruction did not constitute plain error.
 
 D. Local Governmental Agency
 
 32
 Defendant's remaining argument relates to the propriety of the district court's jury instruction on the elements of 18 U.S.C. Sec. 666. One of the elements of 18 U.S.C. Sec. 666--defrauding an institution which receives federal funds--is that the stolen property must be stolen from a state, local or Indian tribal government, or an agency thereof, that receives federal funds. 'Governmental agency' is defined as:
 
 
 33
 [A] subdivision of the executive, legislative, judicial, or other branch of government, including a department, independent establishment, commission, administration, authority, board, and bureau, and a corporation or other legal entity established, and subject to control, by a government or governments for the execution of a governmental or intergovernmental program . . ..
 
 
 34
 18 U.S.C. Sec. 666(d)(2) (1984). The term 'local' is defined as 'of or pertaining to a political subdivision within a State.' 18 U.S.C. Sec. 666(d)(3).
 
 
 35
 The court gave the following instruction to the jury regarding this element of section 666:
 
 
 36
 [T]he Government must prove beyond a reasonable doubt that the Highland Park School District is a local Government Agency.
 
 
 37
 .............................................................
 
 
 38
 ...................
 
 
 39
 * * *
 
 
 40
 Now, members of the jury, I charge you as a matter of law, that the Highland Park School District is a local Government agency of the State of Michigan, because it's clear that it is established and controlled by the Highland Park School Board, which was created and authorized . . . by state law.
 
 
 41
 Without denying that the School District is a local governmental agency, defendant asserts that whether it is a local governmental agency is a question of fact to be decided by the jury. Accordingly, defendant argues that the district court withdrew an issue of fact from the jury, in essence depriving him of a fair trial. Since he failed to object to this instruction below, and since he did not adopt his codefendant's objection, this court can only review the instruction for plain error. See United States v. Pincione, 565 F.2d 404 (6th Cir. 1977) (per curiam).
 
 
 42
 While there are no cases which analyze this issue specifically with respect to section 666, we find this case analogous to those cases which considered the satisfaction of similar statutory elements to be issues of law. See, e.g., United States v. Goldstein, 695 F.2d 1228, 1236 (10th Cir. 1981) (under 18 U.S.C. Sec. 1001, the determination of '[w]hether a statement established by the evidence is within the jurisdiction of an agency or department of the United States is a question of law to be decided by the court'), cert. denied, 462 U.S. 1132 (1983); United States v. Keefer, 799 F.2d 1115, 1126 (6th Cir. 1986) (the issue of whether statements are material within the meaning of 18 U.S.C. Sec. 1001 is a question of law); United States v. Norris, 749 F.2d 1116, 1122 (4th Cir. 1984), cert. denied, 471 U.S. 1065 (1985) (same); cf. Dixson v. United States, 465 U.S. 482 (1984) (where Court concluded that defendants were 'public officials' as a matter of law under 18 U.S.C. Sec. 201(a)). We therefore conclude that the district court did not commit plain error in deciding this element of section 666 as a matter of law.
 
 
 43
 Accordingly, the judgment of the district court is
 
 
 44
 AFFIRMED.
 
 
 
 [1]
 Before the trial court, defendant principally alleged that the FBI agents actually told him that he was not the focus of the investigation. Defendant does not challenge on appeal, however, the trial court's finding that the FBI agents had not made these alleged statements; rather, he focuses on the the existence of the unexecuted warrant and the agents' delay in executing the warrant
 
 
 [2]
 As an aside, we note that it is not at all clear from this record that Hawkins was interviewed in a custodial setting. If he was not subjected to a custodial interrogation, then he would not have been entitled to Miranda warnings. However, inasmuch as he received Miranda warnings and signed a written waiver, we find it unnecessary to determine whether the interview was custodial in nature and merely assume that he was entitled to those warnings
 
 
 [3]
 We believe that the 'timed arrest' cases relied on by defendant, see, e.g., United States v. Carriger, 541 F.2d 545 (6th Cir. 1976), are simply not analogous to the present situation