995 F.2d 1068
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alex TOKAREVICH, Sr., Defendant-Appellant.
 No. 92-3859.
 United States Court of Appeals, Sixth Circuit.
 June 1, 1993.
 
 Before MARTIN and BOGGS, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Alex Tokarevich, Sr. appeals his conviction on seven counts of distribution of dilaudid, a Schedule II controlled substance, without a legitimate medical reason, in violation of 21 U.S.C. § 841(a). Tokarevich argues that the district court should have granted his motion for judgment of acquittal for two reasons: (1) the government entrapped him into committing the offenses; and (2) he issued the prescriptions in good faith, within the scope of his professional practice. Tokarevich also argues that the district court did not adequately instruct the jury on the good faith defense of 21 U.S.C. § 829(a), which allows a licensed physician to prescribe Schedule II controlled substances within the scope of the physician's professional practice. We affirm.
 
 
 2
 On September 7, 1989, Officer Anthony Sarjin, a member of the Drug Enforcement Administration, commenced an undercover investigation of Tokarevich's medical practice. Sarjin undertook the investigation because the DEA had received complaints that Tokarevich was issuing illegal prescriptions. Using the name Anthony Marino, Sarjin scheduled an appointment for September 7 with Tokarevich, a licensed psychiatrist. During the course of the investigation, Sarjin had seven appointments with Tokarevich. At each meeting, Sarjin wore a recording device with which he recorded their conversations.
 
 
 3
 During his first appointment with Tokarevich, Sarjin, posing as Marino, advised Tokarevich that he was having trouble getting through the day. Sarjin also told Tokarevich that he had been taking dilaudid to help him get through the day, and that he had been taking dilaudid for this problem for approximately one and one-half years. Although Tokarevich did advise Sarjin about the dangerous effects of dilaudid, Tokarevich agreed to issue a prescription for dilaudid to Sarjin. Tokarevich issued the prescription without conducting a physical examination of Sarjin and without taking a medical history. Tokarevich also instructed Sarjin to have the prescription filled at a particular pharmacy, citing the numerous investigations into illegal distribution of dilaudid. Moreover, Tokarevich recorded the prescription as necessary for alleviation of pain, and he explained to Sarjin that a prescription for dilaudid required such a justification. Sarjin, however, had not told Tokarevich that he was suffering from pain or from any other physical or psychological ailment, other than that he sometimes had trouble getting through the day.
 
 
 4
 After this initial meeting, Sarjin continued the investigation of Tokarevich. Sarjin, still posing as Marino, met with Tokarevich on six subsequent occasions: September 21 and December 21, 1989; and March 5, April 26, June 4, and August 21, 1990. At each meeting, Tokarevich issued at least one prescription for dilaudid. Tokarevich never conducted a physical examination of Sarjin, nor did he attempt to elicit any medical information to justify prescribing dilaudid to Sarjin. Rather, Tokarevich issued the prescriptions based only upon Sarjin's explanation that dilaudid helped him get through the day. On a few occasions, Tokarevich warned Sarjin about the addictive and destructive nature of dilaudid. Tokarevich twice prescribed alternative medication, in addition to the dilaudid, to help end "Marino's" dependence on dilaudid. Tokarevich also expressed concern about investigations by the DEA or the Food and Drug Administration, and he always cautioned Sarjin to be careful about filling the prescription. Sarjin paid Tokarevich between $90 and $110 for each appointment. Over the course of the investigation, Sarjin paid $1100 to Tokarevich, an amount which includes charges by Tokarevich for days when Sarjin missed a scheduled appointment.
 
 
 5
 On April 26, 1990, Sarjin informed Tokarevich that he was obtaining additional dilaudid from other sources. Tokarevich told Sarjin to determine how much dilaudid he needed in excess of the current prescriptions to eliminate Sarjin's need to look elsewhere for additional dilaudid. On June 4, Tokarevich agreed to provide additional quantities of dilaudid, and he issued two prescriptions to Sarjin, thereby doubling the dosage. To conceal this transaction, Tokarevich did not date the second prescription. Tokarevich gave Sarjin the pen he had used to write the prescriptions, and instructed Sarjin to date the blank prescription with that pen when Sarjin filled the prescription. On August 21, Tokarevich openly acknowledged that he was providing illegal prescriptions to Sarjin, but he told Sarjin that he would be willing to continue prescribing dilaudid for a reasonable price. Tokarevich discussed the street value of dilaudid, and he ultimately agreed to continue issuing the prescriptions for five dollars per pill. Tokarevich again prepared two prescriptions, postdating the second prescription. He then instructed Sarjin not to fill the second prescription until the date written on the prescription. After this appointment, Sarjin did not meet with Tokarevich again.
 
 
 6
 On September 17, 1991, the grand jury indicted Tokarevich on seven counts of distributing a Schedule II controlled substance without a legitimate medical reason, in violation of 21 U.S.C. § 841(a). At the close of the government's case-in-chief, Tokarevich moved for a judgment of acquittal, under FED.R.CRIM.P. 29. In support of this motion, Tokarevich argued that his defense of entrapment was valid because the government had failed to prove beyond a reasonable doubt that Tokarevich was disposed to commit the crime. Tokarevich also argued that the court should grant the motion because he had issued the prescriptions in good faith and within the scope of his professional practice. The district court denied the motion on both grounds, finding sufficient evidence to submit the question of entrapment and the question of whether Tokarevich had issued the prescriptions legally to the jury. The court instructed the jury on the defense of entrapment, including the government's burden of proof to show that Tokarevich was disposed to commit the crime beyond a reasonable doubt. The court also instructed the jury on the authority of a physician to prescribe Schedule II controlled substances within the scope of professional practice. On April 15, 1992, the jury found Tokarevich guilty on each count of illegal distribution of dilaudid. The court sentenced Tokarevich to fifty-one months imprisonment and fined him $7,500. Tokarevich filed this timely appeal.
 
 
 7
 Tokarevich argues that the district court should have acquitted him for two reasons: (1) the government entrapped him into committing the offenses; and (2) he issued the prescriptions in good faith as an attempt to wean "Marino" of his dependence on dilaudid. In essence, Tokarevich argues that the government presented insufficient evidence to prove beyond a reasonable doubt that Tokarevich was disposed to commit the crimes with which he was charged, and that the evidence was insufficient to support his conviction for illegal distribution of a controlled substance because he had issued the prescriptions within the scope of his professional practice. "We review the denial of a Rule 29 motion for judgment of acquittal due to insufficient evidence under the same standard as the district court." United States v. Beddow, 957 F.2d 1330, 1334 (6th Cir.1992) (citations omitted). Viewing the evidence in the light most favorable to the government, if any rational trier of fact could have found the elements of the crime beyond a reasonable doubt, the evidence is sufficient to support the conviction. Jackson v. Virginia, 443 U.S. 307, 319 (1979). "This court 'will reverse a judgment for insufficiency of evidence only if this judgment is not supported by substantial and competent evidence upon the record as a whole, and ... this rule applies whether the evidence is direct or wholly circumstantial.' " Beddow, 957 F.2d at 1334 (quoting United States v. Stone, 748 F.2d 361, 363 (6th Cir.1984)).
 
 
 8
 We believe that the evidence in the record as a whole is more than sufficient to support the jury's determination both that Tokarevich possessed the requisite disposition to commit the offenses for which he was convicted and that Tokarevich issued illegal prescriptions for dilaudid. At trial, the jury listened to tape recordings of each meeting between Sarjin and Tokarevich. The content of those tape recordings amply supports the jury's determination that Tokarevich was disposed to committing the act of issuing illegal prescriptions and, as such, that the government did not entrap Tokarevich. The recordings demonstrate that Tokarevich did not hesitate to prescribe dilaudid to Sarjin, even though he apparently found no medical reason to do so. Moreover, the jury heard expert testimony from another psychiatrist about the medical standard for prescribing dilaudid. Having heard the tape recordings made of the sessions between Sarjin and Tokarevich, the government's expert testified that, in his opinion, Tokarevich had issued prescriptions without a legitimate medical reason. The expert testified about the dangerous and addictive nature of dilaudid, and he testified that only severe physical pain could justify a prescription for dilaudid. The expert also testified that he was unaware of a psychiatric condition which could justify prescribing dilaudid. The tape recordings indicate that Tokarevich never attempted to ascertain a legitimate medical reason for prescribing dilaudid, much less that "Marino" was suffering from severe physical pain. Although Tokarevich has argued that he issued the prescriptions in an effort to wean "Marino" of his dependence on dilaudid, the government's expert testified that issuing prescriptions for this purpose was not within the scope of professional psychiatric practice. Viewing the evidence in the light most favorable to the government, we believe that a rational jury could have concluded that Tokarevich was disposed to issue prescriptions without a legitimate medical reason, and therefore, that Tokarevich's defense of entrapment was without merit. We also believe that a rational jury could have concluded that Tokarevich, in fact, prescribed dilaudid without a legitimate medical reason. Accordingly, the evidence is sufficient to support Tokarevich's conviction, and the district court did not err in refusing to grant Tokarevich's motion for judgment of acquittal.
 
 
 9
 Tokarevich also argues that the district court inadequately instructed the jury on the provisions of 29 U.S.C. § 829, which permits a licensed physician to prescribe Schedule II controlled substances within the scope of professional practice. Tokarevich, however, did not object to the court's proposed instruction below. Therefore, our review is confined to determining whether the instruction given by the district court constituted "plain error." FED.R.CRIM.P. 52(b). "Plain error requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice." United States v. Piccolo, 723 F.2d 1234, 1241 (6th Cir.1983), cert. denied, 446 U.S. 970 (1984). In this case, the district court instructed the jury that a physician "who, in good faith, dispenses drugs or writes prescriptions in the regular course of a legitimate professional practice is specifically protected from prosecution under [29 U.S.C. § 841(a) ]." The court also instructed the jury that a doctor who acts outside the usual course of professional practice and prescribes controlled substances for no legitimate medical reason may be guilty of violating section 841(a). The court instructed the jury that a physician has discretion to choose among a wide range of medical treatments, but that a physician must act in accord with what he believes to be proper medical practice. Finally, the court instructed the jury that it could not find Tokarevich guilty of illegally distributing dilaudid if it found that he had acted in good faith. These instructions do not amount to plain error.
 
 
 10
 The judgment of the district court is affirmed.