UNITED STATES of America,
Plaintiff-Appellee,

v.

John M. BEELER, Defendant-Appellant.

No. 77–5372.

United States Court of Appeals,
Sixth Circuit.

Argued June 5, 1978.

Decided Nov. 30, 1978.

Rehearing Denied Feb. 5, 1979.

Cecil D. Meek, Jr., Ralph E. Harwell, Knoxville, Tenn., for defendant-appellant.

John H. Carey, U. S. Atty., Richard K. Harris, Knoxville, Tenn., for plaintiff-appellee.

Before EDWARDS and PECK, Circuit Judges, and BALLANTINE, District Judge.*

BALLANTINE, District Judge.

Defendant, John M. Beeler, was convicted by a jury in the Eastern District of Tennessee for obstructing, delaying and affecting commerce by extortion in violation of the Hobbs Act, 18 U.S.C. § 1951 (1976).[1] Beeler, as Knox County Commissioner of Welfare, allegedly extorted payments from Robert Kenneth Vann, manager of Browning-Ferris Industries of Knoxville, Inc. (BFI). We reverse.

The voters of Knox County, Tennessee, elected Beeler their Commissioner of Welfare in 1970 and reelected him in 1974. The Knox County Board of Commissioners is composed of three elected officials: the Commissioners of Finance, Highways, and Welfare.

BFI collects residential and commercial refuse in Knoxville and in Knox County outside of Knoxville. As a result of action taken by the Tennessee Legislature, two Knox County landfills used by BFI were to close on July 1, 1972. Knox County made arrangements to dump its refuse in an adjacent county. The City of Knoxville, however, sought the approval of the Commissioners for a landfill within Knox County. By statute, the use of any landfill in Knox County requires approval of the Board of Commissioners.

Vann testified under a grant of immunity that he paid Beeler $20,000 in cash on July 6, 1972, and made a promise of future payments in return for Beeler's favorable vote on the proposed landfill. On July 10, 1972, the Board of Commissioners unanimously approved a landfill for use by the City of Knoxville. Vann further testified that on July 11, 1972, he paid the defendant an additional $10,000; and that once a month between January, 1973, and November, 1975, he would cause a BFI check to be made payable to cash, convert the check to cash, and then he or an employee would deliver the cash to the defendant. These alleged monthly payments totalled $87,500. The payments ended when BFI's parent firm brought the payments to the attention of the Securities and Exchange Commission.

Beeler testified that he first met Vann after the landfill vote of July 10, 1972, and that they became good friends. Further, he

---

* Honorable Thomas A. Ballantine, Jr., Judge of the United States District Court for the Western District of Kentucky, sitting by designation.

1. 18 U.S.C. § 1951 (1976) provides in part:
    (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.
    (b) As used in this section—

\* \* \* \* \* \*
    (2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.
    (3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

stated that he received campaign contributions from Vann of approximately $3,500 to $4,000 and loans of approximately $6,000. An attorney testified that he advised Beeler to amend his 1973 through 1975 tax returns to include the amounts Vann claimed to have given him. The attorney also testified that Beeler strongly objected to doing this, contending that he had not received the payments.

Defendant presents six issues on appeal: (1) Whether there exists a fatal variance between the indictment and the proof introduced at trial; (2) Whether the proof supports the charge in the indictment; (3) Whether the government's closing argument deprived defendant of a fair trial; (4) Whether the Court erred in admitting into evidence the joint income tax returns of defendant and his wife; (5) Whether the Court erred in admitting into evidence hearsay testimony; and (6) Whether the evidence preponderates against the verdict of guilty and in favor of the innocence of the defendant.

■ The Court bases its decision to reverse upon consideration of the first of these issues. A variance occurs when the proof introduced at trial differs materially from the facts alleged in the indictment. In contrast, an amendment involves a change, whether literal or in effect, in the terms of the indictment. Amendments have been held to be prejudicial *per se* while variances may be subject to the harmless error rule. *Gaither v. United States*, 134 U.S.App.D.C. 154, 413 F.2d 1061 (1969); *United States v. DeCavalcante*, 440 F.2d 1264 (3d Cir. 1971). Variances which create "a substantial likelihood" that a defendant may have been "convicted of an offense other than that charged by the grand jury" constitute constructive amendments. Courts apply the prejudicial *per se* approach to such variances. *United States v. Somers*, 496 F.2d 723, 744 (3d Cir. 1974).

■ The purposes underlying the rule against amendments and constructive amendments include notice to the defendant of the charges he will face at trial, notice to the court so that it may determine if the alleged facts are sufficient in law to support a conviction, prevention of further prosecution for the same offense, and finally, of "paramount importance," the assurance that a group of citizens independent of prosecutors or law enforcement officials have reviewed the allegations and determined that the case is worthy of being presented to a jury for a determination of the defendant's guilt or innocence. *United States v. Radetsky*, 535 F.2d 556, 562 (10th Cir. 1976). It appears that the first and last of these policies have been frustrated in this case.

While the indictment stated the dates and amounts of the monthly payments, it made no mention of the alleged July, 1972, agreement to exchange payments for Beeler's vote, nor did it mention the July, 1972, payments.[2] Defendant argues that the absence of these allegations from the indictment and the introduction of proof concerning them at trial constitutes a variance entitling him to a reversal of his conviction.[3]

■ The introduction of evidence concerning offenses other than those charged is appropriate when intent, motive, or lack of mistake are in issue and when accompanied by cautionary instructions. Fed.R.Evid. 404(b); *United States v. Nemeth*, 430 F.2d 704 (6th Cir. 1970). The government does not claim, and it is certainly not the case,

2. The indictment is set forth in part in the appendix attached hereto.

3. In his closing argument, the Assistant United States Attorney stated that Beeler had not been indicted for receiving payments in July, 1972, because these payments had "a questionable effect on interstate commerce" (Transcript of Evidence, Vol. V, 32).

As the indictment made no specific reference to the alleged July, 1972, extortionate agreement, defendant also contends that the indictment fails to charge him with a Hobbs Act violation. As we reverse, we need not consider this issue.

that evidence of the alleged July, 1972, payments and agreement was introduced to prove intent, motive, or lack of mistake.

■ The Fifth Amendment of the Constitution of the United States provides in part:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . . .

Relying on this provision, the Supreme Court has held that a court may not amend an indictment by striking out words as surplusage which may have formed the basis for one or more of the grand jurors to vote to indict. *Ex parte Bain*, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887). In *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), the indictment charged the defendant under the Hobbs Act for interfering with sand brought into Pennsylvania for the manufacture of concrete. At trial the District Court, over defendant's objection,

. . . permitted the Government to offer evidence of an effect on interstate commerce not only in sand brought into Pennsylvania from other States but also in interference with steel shipments from the steel plant in Pennsylvania into Michigan and Kentucky. Again over petitioner's objection the trial judge charged the jury that so far as the interstate commerce aspect of the case was concerned, Stirone's guilt could be rested either on a finding that (1) sand used to make the concrete "had been shipped from another state into Pennsylvania" or (2) "Mr. Rider's concrete was used for constructing a mill which would manufacture articles of steel to be shipped in interstate commerce * * * " from Pennsylvania into other States. *Id.* at 214, 80 S.Ct. at 271–272.

The Supreme Court, in reversing defendant's conviction, stated:

. . . a court cannot permit a defendant to be tried on charges that are not made in the indictment against him. . . Yet the court did permit that in this case. *Id.* at 217, 80 S.Ct. at 273.

■ Defense counsel here cannot be said to have waived objection to the variance by not raising the point at trial. *United States v. Pandilidis*, 524 F.2d 644, 647 (6th Cir. 1975). See also *United States v. Norris*, 281 U.S. 619, 50 S.Ct. 424, 74 L.Ed. 1076 (1930); *United States v. Beard*, 436 F.2d 1084, 1087–1088 (5th Cir. 1971). But see *United States v. Garguilo*, 554 F.2d 59, 63 (2d Cir. 1977); *Jackson v. United States*, 123 U.S.App.D.C. 276, 280, 359 F.2d 260, 264 (1966). Nor can the trial court's instructions which adhered to the indictment, be said to have cured the variance.[4] *Watson v. Jago*, 558 F.2d 330 (6th Cir. 1977).

■ As we reverse, we will address only one further point raised by appellant. Beeler testified that he borrowed money from a bank and from four individuals in order to pay the increased tax he owed as a result of amending his returns. Beeler's defense rested in part on the premise that such loans would have been unnecessary had Vann given him the alleged payments. In his closing argument, the Assistant United States Attorney argued forcefully that defendant's alleged creditors would not have corroborated his testimony had they been called as witnesses. The rule in this Circuit is that counsel must seek and obtain an advance ruling from the Court on the permissibility of arguing for an adverse inference to be drawn from the absence of witnesses. *United States v. Blakemore*, 489 F.2d 193 (6th Cir. 1973). The government in the instant case clearly violated this rule.

The judgment is reversed for further proceedings not inconsistent herewith.

4. The trial judge instructed the jury in part:
    You must try and consider the guilt or innocence of the defendant, John M. Beeler, on the crimes alleged in Counts One through Count 35. He is not being tried as such for the alleged $30,000.00 payments or any other payments. He is being tried, and you must consider his guilt or innocence only on the alleged payments which are set out in Counts One through 35 of this indictment. (Transcript of Evidence, Vol. V, 59.)

## APPENDIX

In Count One the indictment charged:

"1. That on or about the 1st day of September, 1970, to the date of the filing of this indictment, JOHN M. BEELER has been a public official, that is, a member of the Board of County Commissioners of Knox County, Tennessee.

2. That at all times pertinent hereto, the Board of County Commissioners of Knox County had authority, among other things, to approve the use of all landfills in Knox County and to fix the charge, if any, for the use of said landfills.

3. That by order of the State of Tennessee, all then existing open-type landfills in Knox County were to be closed on or about July 1, 1972. As a result of said order, the Board of County Commissioners was seeking alternative landfill sites in or about the summer of 1972, and among those sites considered was a site located on Rutledge Pike in Knox County.

4. That at all times pertinent hereto, Browning-Ferris Industries of Knoxville, Inc., formerly known as Sanitary Disposal Company (hereinafter referred to as BFI–Knoxville, Inc.), was engaged in the waste disposal business in Knox County and was a major user of landfills in Knox County. That for some time prior to on or about September 21, 1972, Robert Kenneth Vann was the owner of Sanitary Disposal Company. On or about September 21, 1972, Sanitary Disposal Company was purchased by Browning-Ferris Industries, Inc., and Robert Kenneth Vann remained as manager of BFI–Knoxville, Inc.

5. That at all times pertinent hereto, waste disposal equipment and supplies made and distributed by manufacturers, producers and distributors in various states, other than the State of Tennessee, were purchased and were to be purchased, and said equipment and supplies were moved and were to be moved, in interstate commerce from said manufacturers, producers and distributors, outside the State of Tennessee for use by BFI–Knoxville, Inc. in the State of Tennessee.

6. That the defendant, JOHN M. BEELER, was at all times pertinent hereto reasonably understood by Robert Kenneth Vann, a representative of BFI–Knoxville, Inc., to have the power by virtue of his public office to influence legislation relating to the approval of landfills in Knox County that could adversely or beneficially affect BFI–Knoxville, Inc.

7. That on or about the 10th day of July, 1972, the Board of County Commissioners publicly approved a resolution authorizing the use of the landfill site located on Rutledge Pike. Said landfill site did not become fully operational until on or about January, 1973.

8. That on or about the 26th day of January, 1973, in the Eastern District of Tennessee, JOHN M. BEELER, the defendant, did knowingly, willfully, and unlawfully obstruct, delay, and affect commerce and the movement of waste disposal equipment and supplies in commerce, by extortion, in that the defendant would and did use his official position as a member of the Board of County Commissioners of Knox County, Tennessee, to unlawfully obtain $2,500.00, which money was not due to him or his office, from and through Robert Kenneth Vann, a representative of BFI–Knoxville, Inc., with the consent of said representative, such consent being induced under color of official right and by fear of economic loss.

In violation of Section 1951, Title 18, United States Code."

Counts two through 35 each incorporated by reference paragraphs one through seven of Count One and then charged defendant, in language similar to that in paragraph eight, with unlawfully obtaining $2,500 each month from February, 1973, through November, 1975.