936 F.2d 573
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kevin W. BOOTH, Defendant-Appellant.
 No. 90-5748.
 United States Court of Appeals, Sixth Circuit.
 July 3, 1991.
 
 Before KENNEDY and ALAN E. NORRIS, Circuit Judges, and JOINER, Senior District Judge.*
 PER CURIAM:
 
 
 1
 Defendant was indicted for and convicted of committing the offense of aggravated sexual abuse on a federal installation in violation of 18 U.S.C. Sec. 2241. He appeals his conviction challenging the sufficiency of the evidence, the jury instructions pertaining to the elements of the offense, an alleged constructive amendment of the indictment and the admission of possible hearsay testimony. For the following reasons, we AFFIRM.
 
 
 2
 Defendant was arrested and criminal proceedings commenced based on a violation of 18 U.S.C. Sec. 2241, which states:
 
 
 3
 Whoever ... knowingly causes another person to engage in a sexual act--
 
 
 4
 (1) by using force against that other person, or
 
 
 5
 (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping; or attempts to do so, shall be fined under this title, imprisoned for any term of years or life, or both.
 
 
 6
 A grand jury indictment charged that defendant did "unlawfully, feloniously and forcibly, while armed with a weapon, that is, a knife, sexually penetrate Regina Strickland, thereby committing the offense of Aggravated Sexual Abuse...." Joint App. at 10. At trial, the government introduced evidence to show that defendant either used force or threatened to use force against the victim in order to accomplish his illegal end. The District Court instructed the jury that defendant could be convicted only if "defendant ... knowingly used force, threatened or placed Mrs. Regina Strickland in fear that she would be subject to death or serious bodily injury...." Joint App. at 185. Defense counsel raised no objection to these instructions.
 
 
 7
 Defendant urges before this Court that the evidence presented and the jury instruction given amount to a constructive amendment of the indictment. He argues that while the indictment charged that defendant committed the alleged offense forcibly, the evidence showed and the jury instruction permitted the defendant to be found guilty of the alleged offense if he either used force or threatened to use force. According to defendant, since the evidence and instruction permitted conviction if the jury found defendant used threats of force, the indictment was constructively amended requiring reversal of his conviction.
 
 
 8
 The dangers to a defendant when an indictment is broadened are primarily twofold. First, a defendant is denied clear notice of the allegations against which he must defend. This prevents meaningful preparation by a defendant for his trial and results in unfair surprise at the proceedings. Second, the amended indictment cannot be used in the future as a bar to subsequent prosecutions. United States v. Miller, 471 U.S. 130 (1985); Berger v. United States, 295 U.S. 78 (1935). Not all changes to an indictment implicate these concerns, however. Courts generally distinguish between prejudicial and non-prejudicial alterations to an indictment based on the concepts of "amendment" and "variance." This distinction can at times be difficult to discern. Indeed, one commentator has noted that a "shadowy distinction" exists between the two. C. Wright, Federal Practice & Procedure Sec. 516 (1982).
 
 
 9
 An amendment alters the charging terms of an indictment. Generally, only the grand jury may broaden through amendment the charges stated in an indictment. Stirone v. United States, 361 U.S. 212 (1960). Reversible error occurs "when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them." United States v. Ford, 872 F.2d 1231, 1235 (6th Cir.1989) (quoting Gaither v. United States, 413 F.2d 1061, 1071 (D.C.Cir.1969)), cert. denied, 110 S.Ct. 1946 (1990).
 
 
 10
 On the other hand, a variance does not alter the charging terms of an indictment, and thus does not subvert the grand jury process, but permits the government to prove the criminal charges with evidence of facts materially different from the facts stated in the indictment. Id. Variances are subject to the harmless error rule. United States v. Beeler, 587 F.2d 340 (6th Cir.1978).
 
 
 11
 The distinction between amendments and variances becomes blurred upon introduction of the concept of a constructive amendment. A constructive amendment is a variance that creates " 'a substantial likelihood' that a defendant may have been 'convicted of an offense other than that charged by the grand jury....' " Id. at 342 (quoting United States v. Somers, 496 F.2d 723, 744 (3d Cir.1974)). In other words, an amendment, constructive or otherwise, has the effect of broadening the potential bases upon which a defendant could be convicted. United States v. Miller, 471 U.S. 130 (1985). Constructive amendments are deemed prejudicial per se, and a defendant need not object at trial in order to preserve such error for appellate review.
 
 
 12
 Whether there is a constructive amendment in the instant case turns on the grand jury's use of the work "forcibly." The word "forcibly" is not found in section 2241; rather, this section prohibits a defendant from committing certain acts "by using force," 18 U.S.C. Sec. 2241(a)(1), or "by threatening ... that any person will be subjected to death, serious bodily injury, or kidnapping," id. Sec. 2241(a)(2). Thus, although the grand jury specifically alleged that the defendant violated section 2241, it did not clearly specify whether its determination was based on one or both of these subsections. Mindful that the interpretation of an indictment requires "practical rather than technical considerations," United States v. Phillips, 869 F.2d 1361, 1364 (10th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 2074 (1989), we conclude that the evidence presented at trial and the instructions given to the jury do not rise to the level of a constructive amendment.
 
 
 13
 First, the jury instruction did not broaden the language of the indictment because the indictment essentially parallels the statutory language. Webster's New International Dictionary provides among its definitions for "force,"
 
 
 14
 12. Law. Strength or power, of any degree, exercised without law, or contrary to law, upon persons or things; violence. In cases of forcible entry, robbery, rape, etc., the word force is generally interpreted as including not only actual application of physical force, but such threats or display of physical force as are reasonably calculated to inspire fear of death or bodily harm.
 
 
 15
 Other definitions of force such as "3. Power, violence, compulsion, or constraint exerted upon a person or thing" could include threats as well. Ballentine's Law Dictionary defines force
 
 
 16
 [a]s an essential ingredient of rape, "force" does not necessarily imply the positive exertion of actual physical force in the act of compelling submission; but force or violence threatened as the result of noncompliance, and for the purpose of preventing resistance, or extorting consent, is equivalent to force actually exerted.
 
 
 17
 In determining what the grand jury meant by the use of the word "forcibly," we believe it should be given its ordinary dictionary meaning which includes the threat of physical force as well as use of actual physical force. There is no basis for assuming that the grand jury wished to charge defendant only under subparagraph (a)(1).
 
 
 18
 This case is distinguishable from Stirone. There the statute required proof that the prohibited acts affected interstate commerce. The indictment charged that defendant violated the Hobbs Act by obstructing the interstate importation of sand from outside Pennsylvania to a concrete supplier within the state. At trial, the evidence introduced and the jury charge given permitted the jury to convict defendant of the criminal charge based either upon an effect on interstate commerce by the importation of sand or an effect by the exportation of steel. Finding these acts to constitute a constructive amendment, the Supreme Court stated:
 
 
 19
 The indictment here cannot fairly be read as charging interference with movements of steel from Pennsylvania to other States.... The grand jury which found this indictment was satisfied to charge that Stirone's conduct interfered with interstate importation of sand. But neither this nor any other court can know that the grand jury would have been willing to charge that Stirone's conduct would interfere with interstate exportation of steel.... And it cannot be said with certainty that with a new basis for conviction added, Stirone was convicted solely on the charge made in the indictment the grand jury returned.
 
 
 20
 Stirone, 361 U.S. at 217. Here, where the ordinary meaning of the word "forcibly" includes compulsion by threats, the grand jury's language includes all the conduct proved as well as that covered in the charge to the jury. We believe it can be "said with certainty" that there was no new basis for conviction not charged in the indictment.
 
 
 21
 United States v. Cusmano, 659 F.2d 714, 719 (6th Cir.1981), is also distinguishable. In Cusmano, the statute prohibited extortion through threats of economic loss or through physical violence. The indictment charged defendant only with extortion through threats of economic loss. The evidence presented at trial showed extortion through both threats of economic loss and physical violence, and the jury instruction allowed for a conviction based on either type of threat. We held that these acts amounted to a constructive amendment. Once again there was no language in the indictment to cover threats of physical violence. Threats of economic loss do not include threats of physical violence. But the word "forcibly" does include both kinds of conduct charged here. The challenged instruction read to the jury in this case, "threatened or placed ... in fear that she would be subjected to death or serious bodily injury," is embraced within "forcibly," the language of the conduct described in the indictment. It does not broaden the indictment.
 
 
 22
 Second, none of the dangers inherent in an amendment are present in this case. Defendant was not taken by surprise at trial. Indeed, the indictment made clear that the statutory violation alleged in the indictment stemmed from one encounter with the victim in which defendant while armed with a knife accomplished his illegal ends. It is noteworthy that the indictment does not charge that he used the knife. This language--"armed with a ... knife"--most probably signifies that the weapon was used to propagate threat. Further, the indictment is sufficiently clear to bar any subsequent prosecution of defendant for a violation of section 2241.
 
 
 23
 Defendant next argues that the testimony of the witnesses, Walter Blaydes and Paul Hutto, was insufficient to prove that the riding trails, including the site where the assault allegedly occurred, was part of the Navy base. Blaydes testified that he was employed at the Navy base as an assistant maintenance supervisor and had held that position for seventeen years; that he was responsible in part for the upkeep of the trails on which Ms. Strickland was riding at the time of the alleged sexual assault; and that this experience allowed him to become familiar with the boundaries of the Navy base as demarcated by the fence lines of the base.
 
 
 24
 Hutto's testimony was similar. He testified that he had been employed at the Navy base as stable manager for four years; that he was responsible for overseeing the riding trails; that he did not allow people to ride off the Navy base; and that his superiors told him upon taking this job that the fence followed the boundary of the Navy base. Hutto confirmed that the site of the alleged crime was within the confines of the Navy base.
 
 
 25
 Defendant initially argues that these witnesses were incompetent to testify based on Federal Rules of Evidence 602 and 701 because they lacked firsthand knowledge of the boundaries of the Navy base.[1] Defendant would concede that Blaydes and Hutto are competent to testify that a fence surrounds the perimeter of the Navy base and that the site of the alleged crime is within the perimeter of this fence. Defendant contends, however, that neither Blaydes nor Hutto were present when this fence was erected and thus do not know whether the fence runs along the boundary of the Navy base. Defendant speculates that the fence could have been erected on private party and and thus enclose property which is not part of the Navy base. Moreover, the testimony of Hutto was based, at least in part, on hearsay statements which is inadmissible pursuant to Rule 802.
 
 
 26
 In applying Rule 701, the modern trend among courts "favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination." Teen-Ed, Inc. v. Kimball Intern, Inc., 620 F.2d 399, 403 (3d Cir.1980); J. Weinstein, Evidence para. 701, at 701-09, 701-17 (1978). A lay witness may offer an opinion on the basis of relevant historical facts that the witness has perceived as long as the two requirements of Rule 701 are met: the opinion is "rationally based on the perception of the witness" and "helpful to a clear understanding of his testimony or the determination of a fact in issue." Id. at 403 (quoting Fed.R.Evid. 701).
 
 
 27
 The District Court did not err in permitting the testimony of Blaydes and Hutto. Both witnesses were intimately familiar with the area in question. Blaydes and Hutto had maintained the area where the alleged crime occurred for 17 and 4 years, respectively, and were not aware of any ownership dispute over this property. Further, the fence surrounding the Navy base had been erected more than 17 years prior to this incident, and these witnesses held positions which would alert them to any disputes over the ownership of this property. The record is barren of any such disputes. Finally, we note that counsel for defendant was able to cross-examine both witnesses and point out the basis of their opinions and any shortcomings stemming therefrom. For these reasons, the opinion testimony of these witnesses was properly admitted.
 
 
 28
 Nor did the District Court err by allowing Hutto to testify as to matters which were based on hearsay. Hutto testified that he was told by a government official "that this was our [Base] area that we maintained." We conclude that the District Court properly admitted this evidence pursuant to Rule 803(20).[2]
 
 
 29
 Further, we have held that the controlling test to establish the "special maritime or territorial jurisdiction" of the United States is " 'one of practical usage and dominion exercised over the ... federal establishment by the United States government.' " United States v. Blunt, 558 F.2d 1245, 1247 (6th Cir.1977) (quoting United States v. Erdos, 474 F.2d 157, 159 (4th Cir.), cert. denied, 414 U.S. 876 (1973)). Applying this standard and construing the evidence and all inferences drawn therefrom in the light most favorable to the government, United States v. Gibson, 675 F.2d 825 (6th Cir.), cert. denied, 459 U.S. 972 (1982), we conclude that the evidence is sufficient to prove that the crime occurred on the Navy base and therefore was within the jurisdiction of the United States.
 
 
 30
 Lastly, defendant contends that the District Court's instruction to the jury regarding the location of the crime and the power of the United States to assert jurisdiction over this crime amounted to a directed verdict in violation of his constitutional right to due process. The District Court gave the following charge pertinent to this issue:
 
 
 31
 In order to establish the offense proscribed by the applicable statute, that is, aggravated sexual abuse, the government must prove the following elements beyond a reasonable doubt, that the defendant, Mr. Kevin Booth, knowingly used force, threatened or placed Mrs. Regina Strickland in fear that she would be subject to death or serious bodily injury to cause her to engage in a sexual act.
 
 
 32
 * * *
 
 
 33
 * * *
 
 
 34
 The court charges you that the United States Naval Air Station located in Millington, Tennessee is an area within the special maritime and territorial jurisdiction of the United States as provided in Title 18 of the United States Code Section 7, and within the jurisdiction of this court.
 
 
 35
 Defendant, relying on United States v. Mentz, 840 F.2d 315 (6th Cir.1988), argues that the requirement of proving that the offense occurred on the base is an element of the crime.
 
 
 36
 In Mentz, we held that the failure to submit an essential element of a crime to the jury for its determination is constitutional error that may not be treated as harmless error. Mentz was charged with armed bank robbery in violation of 18 U.S.C. Sec. 2113(a). The court told the jury that the bank was FDIC insured. One of the elements of section 2113(a) is that the robbery be of a bank which under the statute, is defined as an institution insured by the FDIC. The Mentz court concluded that this instruction amounted to a directed verdict on an essential element of the crime.
 
 
 37
 Mentz is distinguishable on two bases. First, unlike the Mentz court, the judge here did not tell the jury that the crime had occurred on the Naval base. The jury had room to decide that factual issue although it was not expressly brought to the jurors' attention that they should decide it. The indictment, however, charged that it occurred there and the jury was informed of this charge. Second, venue generally is not treated in the same manner as other elements of the crime. In United States v. Bowers, 660 F.2d 527, 531 (5th Cir.1981), the court held:
 
 
 38
 Although territorial jurisdiction and venue are essential elements of any offense, this Circuit has held that territorial jurisdiction or venue are not to be treated as essential elements in the sense that they must be established by proof beyond a reasonable doubt. United States v. White, 611 F.2d 531, 536 (5th Cir.), cert. denied, 446 U.S. 992 (1980). Rather, venue, i.e., the location of the criminal activity, need only be established by a preponderance of the evidence. United States v. Luton, 486 F.2d 1021, 1023 (5th Cir.), cert. denied, 417 U.S. 920 (1974); [Government] of Canal Zone v. Burjan, 596 F.2d 690, 694 (5th Cir.1979).
 
 
 39
 We do not believe that the court directed a verdict against the defendant by this instruction. Whether a United States Naval Air Station is within the special maritime and territorial jurisdiction of the United States is a legal issue, not a factual issue. Moreover, if there was error, it was the failure to instruct the jury that to convict defendant it must find that the assault took place on the Naval Air Station. Defendant did not object to the failure to give such an instruction. All of the evidence identified the place where the alleged rape took place as within the federal enclave. There is no conflict in the evidence. No rational juror could have found the offense to have occurred anywhere except on the base. The failure to give this instruction, which is essentially a venue instruction, was harmless under the Chapman standard.[3] Hence, the jury was given sufficient leeway to decide this issue and the evidence in the record supports this decision.
 
 
 40
 For these reasons, the decision of the District Court is AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior Judge, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Rule 602 states:
 A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony. This rule is subject to the provisions of rule 703, relating to opinion testimony by expert witnesses.
 Rule 701 states:
 If a witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.
 
 
 [2]
 Rule 803(20) states:
 Reputation in a community, arising before the controversy, as to boundaries of or customs affecting lands in a community, and reputation as to events of general history important to the community or State or nation in which located.
 
 
 [3]
 Chapman v. California, 386 U.S. 18 (1967)