Rita M. MARTIN, Petitioner–Appellee,

v.

Betty KASSULKE, Warden, Respondent–Appellant.

No. 91–5788.

United States Court of Appeals, Sixth Circuit.

Submitted Nov. 7, 1991.

Decided July 29, 1992.

David R. Marshall (briefed), Lexington, Ky., for petitioner-appellee.

Rita M. Martin, pro se.

Joseph R. Johnson, Asst. Atty. Gen. (briefed), Chris Gorman, Atty. Gen., Frankfort, Ky., for respondent-appellant.

Before: BOGGS and NORRIS, Circuit Judges; and TIMBERS, Senior Circuit Judge.*

BOGGS, Circuit Judge.

In October 1990, petitioner, who has been in prison since 1984 on charges of first-degree rape, filed a petition for a writ of habeas corpus on the grounds that the difference between the charges against her as outlined in the jury instructions and the charges in her indictment constituted an impermissible constructive amendment of the indictment and not merely a permissible variance. The district court granted the habeas petition on June 18, 1991. We reverse, holding that the difference between the indictment and the jury instructions was only a permissible variance.

I

Rita Martin and her co-defendants, James Hall and Jesse Jameson, were indicted for the first-degree assault, first-degree robbery, and first-degree rape of Nancy Bellamy. Martin and Hall were also charged with first-degree burglary. At trial, the jury found Martin guilty of aiding and assisting Jameson in the first-degree rape of Bellamy and guilty of fourth-degree assault. She received the jury-recommended sentence of ten years, to be served concurrently to a sentence of twelve months and a $500 fine. Hall received the same verdicts and sentence. Jameson was found guilty of first-degree rape and received the jury-recommended sentence of ten years.

Viewed in the light most favorable to the prosecution, the facts of the case are as

* The Honorable William H. Timbers, Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation.

follows. On February 7, 1984, Nancy Bellamy, along with two other people, was helping a friend, Ronnie Treadway, move out of his apartment in Clark County, Kentucky. During the course of the evening, the foursome went to find Rita Martin at the Buckboard Lounge, where Martin worked. They sought to retrieve a pistol that Treadway had given Martin while she had been staying at his apartment the previous weekend. Martin refused to return the pistol to Treadway. Later that night, around 12:30 a.m., defendant Hall and Martin went to Treadway's apartment, knocked on the door, and broke in. Martin demanded the clothes that she had left in the apartment the previous weekend. Bellamy was still at the Treadway apartment.

As Martin started collecting her belongings, Hall threatened Treadway, saying that he had a gun. Treadway ran out to get a police officer who lived in the apartment below. While Treadway was gone, Hall and Martin abducted Bellamy, whom they believed to be a drug informant for the government. They drove Bellamy to Jesse Jameson's apartment where Hall was also temporarily living. There, Hall, Martin, and Jameson severely beat Bellamy. Martin and Hall then tore off Bellamy's clothes and threw her into a tub, with Hall saying "he wasn't going to fuck somebody with blood all over them." Bellamy testified that Hall then dragged her into the living room and raped her, after which Hall and Martin went into a bedroom. Apparently Bellamy then blacked out and woke up the next morning in Jameson's bed with Jameson. At that point Bellamy grabbed her clothes and ran to a friend's house. Bellamy reported the crimes to the police and identified both Jameson and Hall as the rapists.

In custody, Martin gave three statements: 1) she said that Bellamy left Treadway's apartment voluntarily because he was beating her; 2) she said that at Jameson's she fought with Bellamy, and kicked her, but that nobody else was involved; and 3) she said that she then left Bellamy in the bathroom, went to bed, and had sex with Hall. Jameson gave two statements: 1) he said that Martin and Hall woke him up when they came home and when he came out of his bedroom, he saw Bellamy, who he said had a "busted eye and bloody face"; and 2) he said that he then had sex with Bellamy, who was a willing participant. At trial, neither Martin nor Jameson testified. However, Hall testified that Bellamy asked to accompany him and Martin to Jameson's. Hall said that while at Jameson's he and Martin went to bed and had sex while Bellamy was still in the tub. He said that the next thing he heard was his uncle knocking on his door the next morning.

After a jury trial, the three co-defendants were found guilty on June 20, 1984. On appeal, the Kentucky Court of Appeals affirmed Martin's conviction. On April 3, 1989, Martin filed a pro se petition for writ of habeas corpus in federal district court, which was denied for failure to exhaust state remedies. Martin, after filing for and being denied discretionary review by the Supreme Court of Kentucky, then filed another habeas petition with the district court on October 2, 1990. On June 18, 1991, the court granted the petition for a writ of habeas corpus on the ground that a difference between the jury instructions and the indictment constituted a constructive amendment to the indictment. On June 27, 1991, the district court granted a motion by Kentucky for a stay of the habeas writ pending this appeal.

## II

The question of variance or constructive amendment arises in this case because Martin's indictment did not contain all the elements of first-degree rape that were included in the jury instructions. Under Kentucky statutory law, a person is guilty of first-degree rape when:

a) He engages in sexual intercourse with another person by forcible compulsion; or

b) He engages in sexual intercourse with another person who is incapable of consent because he:

i) Is physically helpless; or

ii) Is less than twelve years old.

Ky.Rev.Stat.Ann. § 510.040.

Martin's indictment for first-degree rape stated the following:

Count V: On or about the 8th day of February, 1984, in Clark County, Kentucky, the above named defendants ... committed the offense of RAPE IN THE FIRST DEGREE by knowingly and unlawfully engaging in sexual intercourse with Nancy Bellamy by forcible compulsion and further causing said Nancy Bellamy serious physical injury;

The instruction by which Jameson was found guilty of first-degree rape, and by which Hall and Martin were found accessories to the rape, directed the jury:

You will find the defendant Jesse "Butch" Jameson guilty under this instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

a) That in this county on or about February 8, 1984 ... he engaged in sexual intercourse with Nancy Bellamy, AND

b) That he did so by forcible compulsion, OR

That Nancy Bellamy was incapable of consent because she was physically helpless.

The jury instruction differs from the original indictment in that it mentions the possibility that Bellamy was incapable of consent because of physical helplessness, a possibility that had not been mentioned in the indictment. The indictment had only charged rape by forcible compulsion.

■ There are several methods in which the charges contained in a grand jury indictment may be altered. In *United States v. Ford*, 872 F.2d 1231 (6th Cir.1989), *cert. denied*, — U.S. —, 111 S.Ct. 124, 112 L.Ed.2d 93 (1990), this court recognized two basic categories of indictment modification:

"An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them. A *variance* occurs when the charging terms of an indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment."

872 F.2d at 1235 (quoting *Gaither v. United States*, 413 F.2d 1061, 1071 (D.C.Cir. 1969)) (emphasis in original). An amendment is per se prejudicial, as it directly infringes the defendant's right to know of the charges against him by effectively allowing the jury to convict the defendant of a different crime than that for which he was charged. *Ford*, 872 F.2d at 1235. This case does not present us with an actual amendment; Martin was charged with aiding a rape, and Jameson was clearly convicted for committing a rape.

■ A variance, on the other hand, "is not reversible error unless the accused has proved a prejudicial effect upon his defense," because it merely permits the prosecution to prove facts to establish the criminal charge materially different from the facts contained in the charging instrument. *Ibid.; see also United States v. Beeler*, 587 F.2d 340, 342 (6th Cir.1978). Although it is generally subject to the harmless error test, a variance "infringes upon the 'apprisal function' of the sixth amendment which requires that '[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation....'" *Ford*, 872 F.2d at 1235. If a variance infringes too strongly upon a defendant's sixth amendment rights, it is considered a "constructive amendment," which is "a variance that is accorded the per se prejudicial treatment of an amendment." *Ibid.* However, although a defendant need not demonstrate actual prejudice to demonstrate that a constructive amendment violated his constitutional rights, an element of prejudice clearly remains in this term, as is evident from the following discussion:

A constructive amendment occurs when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which *so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have*

*been convicted of an offense other than that charged in the indictment.*

*United States v. Hathaway,* 798 F.2d 902, 910 (6th Cir.1986) (emphasis added). Thus, to rise to the level of a constructive amendment, the change must effectively alter the substance of the indictment. *Hunter v. New Mexico,* 916 F.2d 595, 599 (10th Cir. 1990), *cert. denied,* — U.S. —, 111 S.Ct. 1693, 114 L.Ed.2d 87 (1991).

The district court, in granting habeas corpus, held that the jury instructions, which added the "physical helplessness" theory of rape, effectively altered the substance of the indictment, and therefore, that the defendant was being tried for a different crime than she had been indicted for, in violation of her constitutional rights. On appeal, the state argues that the addition of the "physical helplessness" theory of the rape statute was only a variance and did not constructively amend the substance of the indictment.

█ A variance is not material, or does not rise to the level of a constructive amendment, unless the variance misleads the accused in making her defense or exposes her to the danger of double jeopardy. *Runyon v. Commonwealth,* 393 S.W.2d 877, 880 (Ky.1965), *cert. denied,* 384 U.S. 906, 86 S.Ct. 1341, 16 L.Ed.2d 359 (1966). The government claims that neither of these things happened here. It contends that there is no danger of a second conviction for the same rape on a different theory and that Martin's defense was not prejudiced by this variance. The government argues that the indictment put Martin on notice that she was charged with first-degree rape, pursuant to Ky.Rev.Stat.Ann. § 510.040. That section authorizes convictions for rapes committed either by forcible compulsion or through physical helplessness of the victim. Therefore, the government contends that her defense would have been prepared in the same manner under either theory, *i.e.,* she was defending against rape, no matter how it occurred.

█ The key question in determining whether this case involves a variance or a constructive amendment is whether rape by forcible compulsion and rape due to physical helplessness should be seen as two alternative crimes or merely two alternative methods by which the one crime, rape, could have been committed. If they are seen as alternative methods, then the addition of the physical helplessness charge would be a variance. However, appellee argues for a more limited understanding of a variance, maintaining that *United States v. Peterman,* 841 F.2d 1474, 1477 (10th Cir.1988), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 783, 102 L.Ed.2d 774 (1989), stands for the proposition that the due process right to clear notice of criminal charges guaranteed by the fourteenth amendment includes notice of the exact method by which the criminal actions were alleged to have been committed. We do not agree.

In *Peterman,* the defendant was indicted for "using deceptive sales techniques and making false representations to victim-customers ... including the use of 'bait and switch' tactics...." *Peterman,* 841 F.2d at 1477. The indictment cited several overt acts where Peterman used these "bait and switch" tactics. However, the jury instructions included a more complete definition of "bait and switch" tactics and thus exceeded and diverged from the activities alleged in the indictment. *Peterman,* 841 F.2d at 1478. The court held that:

> Even assuming that part of the definition of bait and switch in the jury instructions diverged from the activities alleged in the indictment, no evidence was offered at trial to prove the offenses described in the objectionable parts of the instructions....
>
> ....
>
> Thus the evidence produced at trial closely corresponds to the offense initially described in the indictment. There was no evidence in the record which would have allowed the jury to convict Peterman of an offense that was not charged in the indictment.

*Ibid.* The court did not have to reach the issue as to whether adding a new method or expanding the definition would be a constructive variance because the defendant was convicted on evidence that corresponded to the offense initially charged at the indictment. However, the implication of

the case is that if an expanded definition contained in the jury instructions created a new offense not found in the indictment, it would constitute an illegal constructive amendment.

The courts are divided over the question of sex crimes and constructive amendments. In *Hunter v. New Mexico*, 916 F.2d 595 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1693, 114 L.Ed.2d 87 (1991), the defendant received a life sentence for sexually assaulting his daughter and stepdaughter. The stepdaughter testified that Hunter assaulted her, beginning when she was nine years old, in 1974, and repeatedly thereafter until she was seventeen, by placing either his finger or his penis inside her vagina. The jury instruction allowed a conviction for first-degree criminal sexual penetration ("CSP") based on a finding of either sexual intercourse *or* finger penetration, while the information *only* charged that defendant "unlawfully and intentionally engaged in sexual intercourse." *Hunter,* 916 F.2d at 597.

The appeals court granted the writ of habeas corpus, finding a constructive amendment based on the fact that the crime of CSP as defined in the jury instruction did not exist in New Mexico until 1975. Until 1975, CSP was defined as involving only sexual intercourse and not digital penetration, which fell under the definition of fourth-degree sexual assault. The court held that:

> [T]he jury was allowed to convict Hunter on a different set of facts than those set forth in the information. It is possible the jury convicted him of first degree sexual assault based only on digital penetration occurring prior to July 1975. Further, on the instruction provided, the jury could have found Hunter guilty of fourth degree sexual assault, a charge not found in the information. Consequently, we hold the modified jury instruction constituted a constructive amendment of the information which requires reversal.

*Hunter,* 916 F.2d at 599–600.

For further support of the constructive amendment position, appellee points us to

*Clayborn v. State,* 278 Ark. 533, 647 S.W.2d 433 (1983). In that case, the Supreme Court of Arkansas reversed the conviction of a defendant who had raped a 78–year–old victim by forcible sexual intercourse. The Arkansas rape statute set forth the elements of rape as being that a person commits rape if he engages in sexual intercourse or deviate sexual activity with another person by forcible compulsion. Ark.Stat.Ann. § 41–1803(1)(a).[1] The court held that the information charged Clayborn with rape by forcibly engaging in deviate sexual activity, not rape by forcibly engaging in sexual intercourse. The court rejected the government's argument that it was sufficient for the defendant to be charged and convicted of forcible rape, and that the method of rape was irrelevant. The court concluded:

> That argument assumes a fallacious base because appellant was not solely charged with rape. If he had been charged only in general terms, then it might have been sufficient under our liberal rules of procedure, especially in the absence of a motion for a bill of particulars. But here appellant was charged with rape by forcibly engaging in deviate sexual activity. Such a charge includes the crimes formerly labelled by statute as sodomy and buggery, except for the bestiality aspect, and the penetration may be by finger, tongue or dildo.

*Clayborn,* 647 S.W.2d at 434.

However, one of the dissenting judges in *Clayborn* felt that

> The majority's reasoning is akin to arguing that it makes a difference whether one is killed with a bullet or a knife; a copper jacketed shell, or a dum dum bullet; a killing is a killing and the exact method used is invariably irrelevant unless the defendant can show some kind of prejudice.

*Clayborn,* 647 S.W.2d at 436, (Hickman, J., dissenting). This view became the majority view, as the *Clayborn* decision and ratio-

---

**1.** Charged to Ark.Stat.Ann. § 5–14–103 in 1987.

nale was explicitly overruled in *Cokeley v. State*, 288 Ark. 349, 705 S.W.2d 425, *cert. denied*, 479 U.S. 856, 107 S.Ct. 195, 93 L.Ed.2d 127 (1986). The *Cokeley* court held that Ark.Stat.Ann. § 41–1803 provided just one offense of rape with two different ways of commission. In overruling *Clayborn*, the court held:

> The main basis of our [*Clayborn*] decision was that two separate crimes of rape exist: rape by sexual intercourse and rape by deviate activity. We said "... two different crimes were involved ... and the essential elements of the crimes differ." We were wrong in that regard and overrule *Clayborn v. State....*

*Cokeley*, 705 S.W.2d at 426.

In support of its "one crime—two methods" decision, the *Cokeley* court cited two DWI cases where the Arkansas court "unanimously held that there is only one offense of driving while intoxicated with two ways of violating the act, either by operating or controlling a vehicle while intoxicated or operating or controlling a vehicle when blood alcohol content is 0.10% or more." *Ibid.* In the DWI cases, the court had held that, where a defendant was charged on violation of DWI by one method but convicted on evidence of the other method, the charge was sufficient even though the evidentiary requirements of the subsections are different. *Cokeley*, 705 S.W.2d at 426–27 (citations omitted).[2]

We also note that a recent decision by the North Carolina Supreme Court supports this result. In *State v. Moorman*, 320 N.C. 387, 389, 358 S.E.2d 502, 504 (1987), an indictment alleged that the defendant "unlawfully, willfully and feloniously did ravish and carnally know [the victim] *by force and against her will,* in violation of [N.C.Gen.Stat. 14–72.3]." (emphasis added). However, the evidence demonstrated that the defendant had initiated sexual intercourse with the victim while she was asleep. The defendant argued that the prosecution had created a fatal variance between the indictment and the proof presented at trial, because the prosecution had to proceed under the theory that the victim was "physically helpless," as described by N.C.Gen.Stat. 14–72.3(a)(2), instead of claiming that the rape was "by force and against the will" of the victim, as provided in N.C.Gen.Stat. 14–72.3(a)(1). The North Carolina Supreme Court disagreed, and held that the two sections of the North Carolina rape law simply represented two different methods of committing the same crime:

> [T]he common law implied in law the elements of force and lack of consent so as to make the crime of rape complete upon the mere showing of sexual intercourse with a person who is asleep, unconscious, or otherwise incapacitated and therefore could not resist or give consent. Our rape statutes essentially codify the common law of rape. In the case of a sleeping, or similarly incapacitated victim, it makes no difference whether the indictment alleges that the vaginal intercourse was by force and against the victim's will or whether it alleges merely the vaginal intercourse with an incapacitated victim.

320 N.C. at 392, 358 S.E.2d at 505.

We agree with the reasoning of the *Cokeley* and *Moorman* courts, and hold that the Kentucky rape statute, Ky.Rev. Stat.Ann. 510.040, provides only one offense of rape with two different methods of commission. Like the statute in *Cokeley*, § 510.040 was drafted to define all

2. The Eighth Circuit recently granted habeas corpus in this case. *Cokeley v. Lockhart*, 951 F.2d 916 (8th Cir.1991), *petition for cert. filed*, (No. 91–1878), (U.S. May 22, 1992). However, it did not reject the Arkansas Supreme Court's interpretation of the Arkansas rape statute:

> We need take no position regarding the proper interpretation of the Arkansas rape statute. Indeed, *resolution of that matter lies distinctly within the province of the state court and we accept the decision of the state court.* For our

purposes, the only significant issue arising from the conflicting interpretations is that the two-offense interpretation set out in [*Clayborn v. State*, 278 Ark. 533, 647 S.W.2d 433 (1983)] was controlling precedent at the time Cokeley committed the crime and throughout the period he was charged, tried and convicted.

951 F.2d at 919–20 (emphasis added). Thus, the Eighth Circuit's decision does not affect the legal rule established by the Arkansas Supreme Court in *Cokeley*.

kinds of forcible rape, by whatever mode or method. "It actually makes no difference to the law, the victim, nor even the defendant, how he committed the act, it is the violation that is defined and prohibited." *Clayborn,* 647 S.W.2d at 436, (Hickman, J., dissenting).

We also believe that this case can be distinguished from *United States v. Ford,* 872 F.2d 1231 (6th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 124, 112 L.Ed.2d 93 (1990). In *Ford,* the defendant was charged with being a felon in possession of a firearm *"[o]n or about September 28, 1987."* However, the evidence presented actually showed that the defendant had been in possession of a firearm on two occasions well before September 28, 1987; one occasion was seven weeks earlier, the other was eleven months earlier. This court held that because of this evidence, "the essential element of possession was so modified at Ford's trial as to amount to a constructive amendment of ... the indictment." *Ford,* 872 F.2d at 1236. We particularly noted that the trial judge, in a supplemental instruction, told the jury that it could convict the defendant if it found him to have been in possession of a firearm at any time within an eleven-month period. In fact, this instruction was the fatal flaw found by this court. "[T]he modification of the possession charge ... at trial by the court constituted a constructive amendment of the indictment." *Ford,* 872 F.2d at 1237. However, we did not hold that a mere difference between the language of the instruction and the indictment would warrant reversal. Presumably, had the evidence supported only the charge presented in the indictment, the supplemental instruction alone would not have constituted a constructive amendment.

Thus, this case differs significantly from *Ford,* as it presents only a difference between the indictment and the jury instruction, rather than a failure of the prosecution to present evidence to support the charge. The "physical helplessness" language has been added to rape statutes to take account of cases in which the victim "is unconscious or for any other reason is physically unable to communicate unwillingness to an act," and thus may be violated by the rapist without any need for the use of "forcible compulsion." Ky.Rev.Stat. Ann. §§ 510.010(6), 510.040(1). This language would not have been necessary to convict in the case where the rapist uses sufficient force to induce a state of physical helplessness. In this case, if the victim is to be believed, Jameson participated in the use of forcible compulsion that induced a state of unconsciousness. Therefore, Jameson relied upon "forcible compulsion," rather than taking advantage of "physical helplessness."

Nor can Jameson contend that the instruction prevented him from presenting a full defense. Jameson never denied having sex with the victim, but stated that she was a "willing participant" in whatever sex occurred. Martin's statements corroborated this defense, which was evidently rejected by the jury. Jameson's specific comment that the victim willingly participated in sex with him clearly negates any possibility that he staked his defense on the notion that the victim was physically helpless and that her helplessness meant that he was not guilty of the crime with which he was charged.

Thus, it is in no way unfair to convict Jameson, and Martin along with him, even if it was for a rape committed when the victim was unconscious as a result of the savage beating testified to in this case. In fact, this result could not even be considered theoretically unfair; prejudicial error cannot rest on a speculative assumption that the defendants may have presented a different defense (which would make their actual defense perjurious) if they had known of the final jury instruction. Furthermore, there is no possibility that the jury could have convicted Jameson on the grounds that the victim was physically helpless, unless it also concluded that the fists and feet of the defendants caused her helplessness. By his statements regarding the victim's willing participation, Jameson asserted that the victim was not physically helpless. Thus, Martin cannot now argue that the jury instruction prejudiced Jame-

son's defense; Jameson's statements, if believed, represented a full defense to the claim that the victim was physically helpless.

Having reviewed the record, we are confident that no prejudicial error occurred. As stated in *Clayborn,*

> Our goal, as an appellate court, is to see that a system exists for a fair trial, not a perfect one, but one free of prejudice. Errors that do not deny such a trial are not reversible errors. Especially in cases where the evidence of guilt is overwhelming.

*Clayborn,* 647 S.W.2d at 436, (Hickman, J., dissenting).

Based on our view of nature of the offense, the indictment, and the instructions, as well as the lack of prejudice to defendant, we REVERSE the district court's grant of the writ of habeas corpus.

TIMBERS, Senior Circuit Judge, dissenting.

I regret that I cannot join in the majority's innovative opinion. I cannot do so because it ignores the fundamental precept of federal constitutional law that a "court cannot permit a defendant to be tried on charges that are not made in the indictment...." *Stirone v. United States,* 361 U.S. 212, 217 (1960). And yet that is precisely what the majority has condoned here.

In a case that appears to be one of first impression in this Court, the majority has departed from the law of this Circuit and of the Supreme Court. Moreover, it has turned on its head the Kentucky statute under which the defendant was prosecuted.

Ky.Rev.Stat.Ann. § 510.040 (1990) provides that first degree rape may be committed in sexual intercourse with another person by *"forcible compulsion"* or in sexual intercourse with another person who is *"physically helpless".* (emphasis added). The majority acknowledges that the trial court instructed the jury that it could convict if it found that the victim was incapable of consent because of *physical helplessness,* although not charged in the indictment. It further acknowledges that the indictment charged only rape by *forcible compulsion.*

Thus the lines are squarely drawn. The majority holds that the acknowledged discrepancy between the charge in the indictment and the jury instruction is a mere variance subject to harmless error. I would hold that it is a constructive amendment which is prejudicial *per se.*

> It is the settled law of this Circuit that "A constructive amendment occurs when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment."

*United States v. Hathaway,* 798 F.2d 902, 910 (6 Cir.1986); *see also United States v. Ford,* 872 F.2d 1231, 1235–37 (6 Cir.1989), *cert. denied,* 111 S.Ct. 124 (1990). With the law so clearly settled in this Circuit, I see no need to reach out for support from decisions of state courts as the majority does to support its novel holding.

I am particularly unpersuaded by the majority's attempted end-run to circumvent the settled law of this Circuit, i.e. by characterizing the Kentucky rape statute as providing "only one offense of rape with two different methods of commission." Such analysis could be invoked to avoid reversal of convictions under many other statutes that provide alternative grounds for prosecution of criminal conduct. The majority's analysis strikes me as establishing a dangerous precedent.

I would affirm the district court's order granting a writ of habeas corpus conditioned on the Commonwealth's right to retry appellee and I would vacate the stay pending appeal which was entered more than a year ago. From the majority's refusal to do so, I respectfully but emphatically dissent.