64 F.3d 663
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee
v.
William BITTNER, Defendant-Appellant
 No. 94-1830.
 United States Court of Appeals, Sixth Circuit.
 Aug. 16, 1995.
 
 Before: RYAN and SUHRHEINRICH, Circuit Judges; JARVIS, Chief District Judge.*
 PER CURIAM.
 
 
 1
 Defendant William Bittner appeals from his criminal conviction for making a false statement to the United States Navy, in violation of 18 U.S.C. Sec. 287. For the following reasons, we affirm defendant's conviction.
 
 I.
 
 2
 The Navy covers the hulls of some submarines with a sound-deadening rubber known as Specialized Hull Treatment (SHT). In 1990, the Navy needed to dispose of a large quantity of scrap SHT. Defendant's business, Community Recycling Company (CRC), located in Detroit, Michigan, submitted a bid on a contract to grind the SHT into small pellets and then recycle them to make commercially viable products.
 
 
 3
 In July 1990, Navy representatives visited CRC to determine defendant's ability to perform the contract. Defendant, who was a former Air Force contract lawyer, convinced the representatives that he could perform and was awarded the contract. However, between July 1990 and January 1991, no SHT was shipped to defendant because CRC was not ready to perform. Margaret Harris, the Navy contract administrator for this project, testified that in January 1991, defendant told her that his equipment was set up. In late January, defendant received 119,000 pounds of SHT for recycling, his first shipment under the contract.
 
 
 4
 It is undisputed that on January 31, 1991, defendant submitted a document, labeled as an invoice, billing the Navy $14,294.64 for the work. The Navy paid the bill in March 1991, and defendant later cashed the check. After it was unable to contact defendant, the Navy learned that defendant's business had been evicted from its premises for non-payment of rent. The Navy also learned that no SHT had been recycled and that all but two of the containers in which the SHT had been shipped to defendant had not been opened.
 
 
 5
 Defendant was indicted in a three-count indictment. Count 1 alleged a violation under 18 U.S.C. Sec. 1001 for lying to the Navy about his recycling experience. This count was dismissed by the government prior to trial. Count 2 of the indictment alleged a violation of Sec. 1001 for lying to the Navy about having the equipment in place to recycle the SHT. The jury acquitted defendant of this charge. Count 3, under which defendant was convicted, alleged a violation of 18 U.S.C. Sec. 287 for submitting a false, fictitious, or fraudulent claim to the Navy for recycling the 119,000 pounds of SHT.[1] Defendant was sentenced to three years' probation, with the first four months to be served in home confinement. This appeal followed.
 
 II.
 
 6
 Defendant first argues that his conviction was not supported by sufficient evidence. The familiar test for sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). See also United States v. Smith, 39 F.3d 119, 121 (6th Cir. 1994).
 
 
 7
 The offense created by 18 U.S.C. Sec. 287 makes it unlawful to present a claim to an agency of the United States knowing such claim to be false, fictitious, or fraudulent.
 
 
 8
 The contract defendant entered into with the Navy included a payment clause, providing that payment was due to defendant after his recycling of the SHT was complete.[2] Ms. Harris, the contract administrator, specifically advised defendant that he would be paid only after completing the work. Nevertheless, defendant submitted an invoice, on which he included the phrase "Amount Due," followed by the amount he was to receive. Thus, the jury was entitled to interpret this phrase as an assertion that the recycling was complete. It was also entitled to find that by listing the "Amount Due," defendant was making a claim for payment. Thus, because defendant is charged with knowledge of the terms set forth in the contract, the evidence introduced at trial was sufficient to prove beyond a reasonable doubt that defendant caused a false claim to be submitted to the Navy, which claim defendant knew to be false.
 
 
 9
 Defendant nonetheless argues that he was not making a claim for payment, but rather was merely sending some sort of "acceptance" documentation to the Navy in compliance with the recycling contract. The provision on which defendant relies, however, relates to security requirements that must be met by contractors handling SHT. Moreover, defendant never mentioned this contract provision during trial. Thus, the fact that defendant included the word "accepted" on the invoice merely bolsters the government's argument that defendant was making a claim for payment.
 
 
 10
 Defendant also claims that his judgment of conviction should be reversed because the jury convicted him for an offense not charged in the indictment. Defendant claims that the government, in closing argument, changed its theory of the case and thus amended or prejudicially varied Count 3 of the indictment.
 
 
 11
 The government did not change its theory from that outlined in Count 3 of the indictment. The government's theory was that by submitting an invoice to the government, defendant falsely asserted that he had completed his work under the contract, when he in fact had not done so.
 
 
 12
 In United States v. Beeler, 587 F.2d 340, 342 (6th Cir. 1978), this court stated that:
 
 
 13
 A variance occurs when the proof introduced at trial differs materially from the facts alleged in the indictment. In contrast, an amendment involves a change, whether literal or in effect, in the terms of the indictment. Amendments have been held to be prejudicial per se, while variances may be subject to the harmless error rule. (Citations omitted). Variances which create "a substantial likelihood" that a defendant may have been "convicted of an offense other than that charged by the grand jury" constitute constructive amendments. Courts apply the prejudicial per se approach to such variances. (Citation omitted).
 
 
 14
 Thus, not every variation between the indictment and the proof adduced at trial creates reversible error. United States v. Feinman, 930 F.2d 495, 499 (6th Cir. 1991).
 
 
 15
 The government argued at closing that the invoice was false because it said there was an amount due, despite the fact that the contract specified that nothing was due until the work had been completed. The government then stated that the charging language of Count 3 did not have to be on the invoice in order for it to be false. Rather, the government argued that by making the statement that payment was due, when no payment could be due until the work was done, defendant was claiming that the work had in fact been done. Although the government did state in closing that the jury should not get "hung up" on the distinction between the words in the indictment and the words on the invoice, the context of that statement clearly indicates that the government simply meant that the precise words of Count 3 were not required to be on the invoice itself. This certainly fails to rise to the level of a constructive amendment of the indictment. Moreover, to the extent that there was any question about the precise wording of Count 3, the verdict form quoted its language verbatim, and the jury thus had before it the terms of the indictment when it convicted defendant.
 
 
 16
 Thus, even if defendant's characterization of the government's argument is correct, he was not prejudiced. The trial transcript reflects that the government constantly focused on the undisputed fact that the work had not been completed and that defendant nevertheless submitted a bogus invoice. The government did not waiver from this theory throughout the trial. Therefore, we are convinced that the jury convicted defendant for the offense charged in Count 3 of the indictment and, consequently, there was no prejudicial variation of the indictment.
 
 
 17
 Finally, defendant contends that the government improperly asked the jury to infer that an absent witness would testify adversely to him. It is improper for any party draw an adverse inference from the absence of a witness without prior permission of the trial court, unless the witness is peculiarly within the power of the defendant to produce. See Beeler, 587 F.2d at 343; United States v. Blakemore, 489 F.2d 193 (6th Cir. 1973). Defendant argues that the government violated this rule in its closing argument.
 
 
 18
 We must consider, however, the context of the government's closing statement in light of defendant's theory of the case as reflected in his closing argument. Defendant argued to the jury that his invoice did not falsely tell the Navy that he had completed the shredding of the SHT. He supported this argument by relying on evidence that at about the time he sent the invoice to the Navy, he told a Navy official, Erlinda Palmos, that he had begun the work. He argued from this that she was aware the work had not been completed. He thus asked the jury to conclude that he never made a representation that he had shredded the rubber.
 
 
 19
 In its rebuttal argument, the government argued as follows:
 
 
 20
 [W]e do not claim in any sense that it was improper to send the invoice to Erlinda Palmos. Our claim is that that invoice was a false invoice, and Erlinda Palmos was not the person to appreciate it because Erlinda Palmos didn't know the significance of the words on it, didn't know the payment procedure, didn't know the contracting procedure.
 
 
 21
 Curiously, defendant now contends that by this argument, to which he failed to object,[3] the government told the jury that a payment official existed who, if called, would have testified that she was misled by the invoice. However, the government did not identify Ms. Palmos as a missing witness in its closing argument. Moreover, it did not make any representations about the testimony of any missing witness. Rather, the government simply noted that it did not matter whether or not defendant told Ms. Palmos that the shredding was incomplete. Since the government did not ask the jury to draw an adverse inference from the absence of any witness, but was merely rebutting defendant's own closing argument, the absent witness rule does not apply.
 
 III.
 
 22
 Accordingly, for the foregoing reasons, we AFFIRM defendant's judgment of conviction and sentence.
 
 
 
 *
 The Honorable James H. Jarvis, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 Count 3 charged:
 On or about January 31, 1991, in Detroit, in the Eastern District of Michigan, Southern Division, defendant William C. Bittner knowingly and willfully caused to be made and submitted to the United States Navy Norfolk Naval Shipyard a claim for payment of $14,294.64 upon the United States. This claim, as defendant William C. Bittner well knew, was false and fraudulent, in that by making it defendant represented that he and his company had shredded about 119,000 pounds of rubber, taken from a United States Navy submarine, in compliance with the specification of his contract with the government when in fact, as defendant well knew, he had shredded none of the rubber and had not complied with the contract.
 All in violation of Title 18, United States Code, Section 287.
 
 
 [2]
 The contract incorporated numerous provisions of the Federal Acquisition Regulation (FAR). The payment clause is set forth in FAR 52.232-1 (48 C.F.R. Sec. 52.232-1)
 
 
 [3]
 Defendant thus waived any objection on appeal. See United States v. Meyers, 952 F.2d 914, 917 (6th Cir.), cert. denied, 503 U.S. 994 (1992)